# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MARCH 1998 SESSION

FILED

June 11, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 02C01-9704-CR-00133 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. CAROLYN WADE |
| CYNTHIA G. STARKS, | ) | BLACKETT, JUDGE |
| | ) | |
| Appellant. | ) | (Theft over $10,000) |


**FOR THE APPELLANT:**

**BILL ANDERSON, JR.**
138 North Third Street
Memphis, TN 38103-2007

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**JANIS L. TURNER**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JOHN W. PIEROTTI**
District Attorney General

**JAMES J. CHALLEN, III**
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947


**OPINION FILED:** _____


**AFFIRMED**


**JOE G. RILEY,**
**JUDGE**

## OPINION

The defendant, Cynthia G. Starks, pled guilty to the offense of theft over $10,000, a Class C felony. The defendant agreed to a sentence of three (3) years as a Range I offender and a fine of $500. The trial court denied the defendant's petition for total probation and refused to grant her judicial diversion. The trial court ordered an alternative sentence of split confinement requiring the defendant to serve weekends at the Shelby County Correctional Center for six (6) months followed by three (3) years probation. In this Court, the defendant presents the following issue for our review: "[w]hether the trial Court erred in ordering a split confinement type of sentence in this matter, and, in light of the Court's determination, whether the type sentence imposed on the Defendant was too severe as a matter of law." After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

I

In 1989, the defendant began working as the administrative assistant to the vice-chairman of the National Bank of Commerce (NBC). In this position she was responsible for making payments on the vice-chairman's expense accounts. Beginning in 1992, the defendant placed phone orders for large quantities of cosmetics using her employer's Gold MasterCard. In 1992, defendant charged $566 to the account. In 1993, she charged $9,754 on the card. In 1994, the unauthorized charges totaled $44,811. In January and February of 1995, she charged an additional $3,711 to the account. Taking into account an additional $617 cash from general ledger expense tickets, the defendant admitted to stealing a total of $59,514 from NBC.

Defendant paid on the expense account as the charges accumulated by submitting general ledger expense tickets to the vice-chairman for approval. She

also prepared expense tickets with fictitious descriptions and forged the vice-chairman's signature. The defendant submitted the tickets to the bank's teller, who applied them as payment on the account. The vice-chairman was assigned a new administrative assistant in 1995 who noticed the discrepancies in the bank records. The defendant's thefts were then discovered.

The defendant testified that she used the account to purchase cosmetics because she suffered from depression stemming from her marital difficulties. The defendant also claimed she was under the influence of several prescription medications for depression and anxiety during this period of time. She stated she did not have a clear recollection of using the charge account and that the medications made her feel "like [she] was floating through life." Defendant also testified that she no longer possessed any of the $59,000 worth of cosmetics she purchased. She claimed that she did not sell or store the products, but gave them away to friends and relatives.

Defendant was examined by a psychiatrist, Dr. Thomas Bannister, who submitted a letter to the trial court stating that defendant had developed the symptoms of major depression in 1992. He concluded that the combination of major depression, psychotropic medications and the regular use of alcohol may have "diminished [her] ability to control [her] . . . impulses" and contributed to her behavior. A vice-president from NBC also testified that the bank was not opposed to a sentence of full probation for the defendant as long as she met her obligation to pay $100 per month in restitution to the bank in accordance with a civil judgment.

In sentencing the defendant to split confinement, the trial court stated:

> I still think she needs to do some time. That was a very large amount of money. Even though there's -- by that letter there's evidence of some type of mental problem with her. She still did what she did, and she continued to do what she did. You know, if there was -- if she was completely incapacitated that would be a completely different situation, but being depressed -- a lot of people get depressed . . . but they don't go out and steal that kind of money.
>
> . . . [I]f she had done it one time just as a last resort, gave up on life or something I could understand it. But she did it over a period of time, so she had the intent to do that and not only do it but just continue to do it. The only reason why she quit was she got caught. And if they hadn't caught her, she'd still be doing it now.

3

The trial court also noted that the defendant did not appear to show remorse for her actions.

## II

The defendant contends the trial court erred by ordering a sentence of split confinement rather than judicial diversion or full probation. The defendant argues the sentence imposed by the trial court, requiring her to serve a one hundred eighty (180) day sentence on weekends, was too severe based upon the evidence and was, therefore, erroneous as a matter of law.

### A.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

When a defendant contends that the trial court committed error in refusing to impose a sentence pursuant to Tenn. Code Ann. § 40-35-313, commonly referred to as "judicial diversion," a different standard of appellate review applies. In reviewing these issues this Court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. State v. Bonestel, 871

4

S.W.2d 163, 167 (Tenn. Crim. App. 1993); State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992); State v. George, 830 S.W.2d 79, 80 (Tenn. Crim. App. 1992). As this Court said in State v. Anderson:

> The standard by which we must review a judicial diversion decision is not specifically provided in the 1989 Act. In T.C.A. §§ 40-35-401 and -402, appellate review of the range, length or manner of service of a sentence is *de novo* upon the record with the trial court's determinations being presumed correct. However, judicial diversion entails more than these sentencing characteristics--it affects the underlying conviction as well. Also, the sentencing alternatives provided by the legislature in T.C.A. § 40-35-104 do not include judicial diversion.
>
> We conclude that judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under T.C.A. § 40-15-105. Therefore, upon review, if "any substantial evidence to support the refusal" exists in the record, we will give the trial court the benefit of its discretion. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983). Only an abuse of that discretion will allow us to overturn the trial court.

857 S.W.2d at 572.

When the accused raises sentencing issues in this Court, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments; State v. Ashby, 823 S.W.2d at 169; State v. Fletcher, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991).

**B.**

Defendant contends the trial court abused its discretion in refusing to grant her judicial diversion. However, defendant never formally requested that the trial court grant judicial diversion. Although defense counsel briefly mentioned judicial diversion in his closing statement during the sentencing hearing, we do not find this to be sufficient to properly bring the issue of judicial diversion before the trial court. Nevertheless, we will address the issue on its merits.

The criteria that must be considered in determining whether an eligible accused should be granted judicial diversion include: (a) the defendant's amenability to correction; (b) the circumstances of the offense; (c) the defendant's criminal record; (d) the defendant's social history; (e) the defendant's physical and

mental health; and (f) the deterrence value to the defendant as well as to others. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as the defendant. Id.

In this case, although the trial court did not address the propriety of judicial diversion, by ordering a period of confinement the court implicitly denied judicial diversion. We find that there is sufficient evidence to support a denial of judicial diversion. While the defendant had no prior criminal record and there was evidence she suffered from mental health problems, the trial court noted that a period of incarceration was necessary to avoid depreciating the seriousness of the offense as it involved the theft of over $59,000 over a period of years. Furthermore, defendant's actions exhibited a violation of private trust and a sustained intent to violate the law. Moreover, our review of defendant's testimony indicates that she was not completely candid with the trial court. Therefore, we conclude that the trial court did not abuse its discretion in refusing to grant the defendant judicial diversion.

This issue is without merit.

## C.

The defendant further contends the trial court erred in failing to grant total probation. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); *see* Tenn. Code Ann. § 40-35-303(b). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the

6

defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also* State v. Ashby, 823 S.W.2d at 169; State v. Grigsby, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997).

Although the trial court granted the defendant an alternative sentence of split confinement, the court refused to suspend her entire sentence. The trial court stated some confinement was necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B). Based upon the need to avoid depreciating the seriousness of the offense and the long period of time over which the crimes occurred, the defendant was not entitled to total probation. However, based upon the fact that she had no prior record and had mental health problems, some form of alternative sentencing was appropriate. The trial court reached an appropriate compromise in sentencing the defendant.

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

7

**CONCUR:**

_____

**GARY R. WADE, PRESIDING JUDGE**

_____

**JERRY L. SMITH, JUDGE**