# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST SESSION, 1998

FILED

December 29, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9711-CR-00439** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CHRIS CRAFT** |
| **KIMBERLY WILLIAMS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - First Degree Murder)** |

FOR THE APPELLANT:

EDWARD G. THOMPSON
Assistant Public Defender
200 Jefferson, Suite 725
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM L. GIBBONS
District Attorney General

JERRY R. KITCHEN
DANIEL S. BYER
District Attorney General
201 Poplar Street
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On February 27, 1997, a Shelby County jury convicted Appellant Kimberly Williams of first degree murder, especially aggravated kidnapping, aggravated robbery, attempted aggravated robbery, two counts of aggravated assault, and two counts of aggravated burglary. Following a sentencing hearing on March 17 and 26, 1997, the trial court imposed a total sentence of life imprisonment plus twenty-three years. Appellant challenges his sentence for each conviction as well as his conviction for first degree murder, raising the following issues:

> 1) whether the evidence was sufficient to support the conviction for first degree murder:
> 2) whether the trial court properly applied various enhancement factors to Appellant's sentences;
> 3) whether the trial court properly sentenced Appellant to a longer term of imprisonment than his co-defendant; and
> 4) whether the trial court properly denied Appellant's motion for a list of the State's witnesses for the sentencing hearing.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

On February 27, 1996, at approximately 1:00 a.m., Coleman Dickson, who had been sleeping on the floor next to his daughter, was awakened by Rodney Jeffries, who was pointing a black nine millimeter pistol at Dickson's head. When Jeffries asked "Where is the dope at," Dickson responded that he did not have any drugs in his apartment. Appellant then entered the apartment and tied up Dickson and then blindfolded him. Dickson subsequently told the two men where

his .357 handgun was hidden and Appellant then retrieved the gun and loaded it. The two men also took $70, a gold chain, a ring, a pager, and some keys from Dickson.

When Dickson told them that he had previously purchased marijuana from his neighbor, Appellant and Jeffries decided to enter the neighbor's apartment. The two men then cut the bonds on Dickson's feet and took him across the hall, despite his pleading to be left with his children and his statement that he was afraid that if he went into the other apartment he would be shot by whoever was in it. Appellant then kicked in the back door of the neighbor's apartment and Dickson, who was still blindfolded and had his hands tied behind his back, was shoved in first. Dickson remained blindfolded during all of the subsequent events in the second apartment.

Gwendolin Pamplin was in bed with Artelia Anderson when she heard the gunmen kick in the door to her apartment and yell "Police, that [sic] is a bust." Before they could go out the bedroom door, one of the gunmen brought Tabitha Todd into the bedroom while holding a gun to her back. After the second gunman entered the bedroom, they ordered everyone to lay on the floor and began asking for drugs and money. After Anderson said that they didn't have any drugs or money, Appellant took Anderson out of the bedroom.

As Appellant was taking Anderson out of the bedroom, Anderson broke free and attempted to lock himself in the bathroom. Jeffries then left the bedroom and joined Appellant. Appellant then kicked open the bathroom door and began hitting Anderson in the head with the .357 handgun. Todd testified that during

-3-

this time, one of the gunmen yelled "Put him in the bath—put this nigger in the bathtub so we can shoot him" and "Look at my face, nigger, before I kill you." Anderson then begged the gunmen not to kill him. After a scuffle, one of the gunmen said "Shoot that nigger," and shots were fired. Jeffries testified that Appellant shot twice and then Jeffries shot twice.

An autopsy revealed that Anderson was shot once in the back and once in the thigh, with both shots severing major arteries. The autopsy also revealed that Anderson had sustained several injuries to his head that were consistent with his being struck several times with a pistol. The cause of Anderson's death was multiple gunshot wounds.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction for first degree murder. Specifically, Appellant does not contend that the evidence is insufficient to prove that he killed Anderson, Appellant merely contends that the evidence was insufficient for a reasonable jury to find him guilty of "intentional deliberate premeditated murder." Initially, we note that Appellant's argument that there was no proof of deliberation is irrelevant. The crimes in this case were committed after the 1995 amendment that eliminated deliberation as an element of first degree murder. See Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1998) ("First degree murder is: A premeditated and intentional killing of another.").[1]

---

[1]The record indicates that the trial court used the proper standard when it instructed the jury on first degree murder.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d at 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." See also Matthews, 805 S.W.2d at 780.

Although premeditation requires that "the intent to kill must have been formed prior to the act itself," "[i]t is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time." Tenn. Code Ann. § 30-13-202(d) (Supp. 1998). The element of premeditation is a question for the jury and may be inferred from the circumstances surrounding the killing. State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993).

Looking at the facts in the present case in the light most favorable to the state, as we are required to do, we conclude that the evidence is sufficient to support the jury's finding of premeditation. Indeed, the evidence showed that both Appellant and Jeffries were armed when they kicked in the door and entered the apartment were the killing occurred. After Anderson broke free and attempted to lock himself in the bathroom, Appellant kicked open the bathroom door and began hitting Anderson in the head with the .357 handgun. Todd testified that during this time, one of the gunmen yelled "Put him in the bath—put this nigger in the bathtub so we can shoot him" and "Look at my face, nigger, before I kill you." Anderson then begged the gunmen not to kill him. Todd, Pamplin, and Dickson all testified that they heard one of the gunmen give an order to shoot Anderson before the shots were fired. Clearly, a reasonable jury could infer from this sequence of events that Appellant had time to reflect on what he was doing before he shot Anderson and thus, that his actions were intentional and premeditated. This issue has no merit.

## III. APPELLANT'S SENTENCE

Appellant contends that the trial court made several errors in determining his sentence. Specifically, Appellant contends that the trial court misapplied several enhancement factors. Under Tennessee law, "[w]hen reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The defendant has the burden of demonstrating that the sentence is improper." Id.

A portion of the Sentencing Reform Act of 1989, codified at Tennessee Code Annotated § 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

Tenn. Code Ann. § 40-35-210 (1997). In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Act further provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." Tenn. Code Ann. § 40-35-210(f) (1997). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. Tenn. Code Ann. § 40-35-210 (1997) comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal. In addition, "[w]hen imposing sentences for multiple offenses, the trial court must make separate findings as to which enhancement and mitigating factors apply to which convictions." State v. Christopher Blockett, No. 02C01-9509-CC-00258, 1996 WL 417659, at *4 (Tenn. Crim. App., Jackson, July 26, 1996) (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994). Because the record indicates that the trial court considered the sentencing principles and all relevant facts and circumstances, our review of Appellants' sentences is de novo with a presumption of correctness.

In determining the sentence for each of Appellant's convictions, the trial court found that the only mitigating factor that applied was the fact that Appellant assisted the authorities in locating Jeffries. See Tenn. Code Ann. § 40-35-113(9) (1997). The court gave little weight to this factor because Appellant did this only after he had been arrested and he essentially tried to blame everything on Jeffries. We agree that no evidence was presented to support a finding that any other mitigating factors were present.

The trial court also found that at least two of the enhancement factors listed in Tennessee Code Annotated § 40-35-114 applied to each of Appellant's convictions. First, the court found that factor (1) applied because Appellant had a previous history of criminal convictions or behavior. Appellant argues that the trial court erred when it applied this factor because it found by a preponderance of the evidence that Appellant had previously participated in a similar home invasion robbery.[2] He argues that the trial court's reliance on this criminal episode violates his constitutional rights because he had not yet been convicted of the offense in a jury trial. This argument has no merit. The Tennessee Supreme Court has held that a trial court may utilize criminal behavior shown by preponderance of the evidence to enhance sentence, without violating due process rights under the federal or state constitutions. State v. Carico, 968 S.W.2d 280, 287 (Tenn. 1998). In addition, Appellant had prior convictions for

_____

[2]Initially, Appellant argues that there was not enough proof for the trial court to conclude by a preponderance of the evidence that he was involved in the previous robbery. However, the record indicates that Clifton Jackson testified that he was with Appellant and another man when they went to a residence, kicked down the door, identified themselves as police, and entered the residence for the purpose of stealing drugs and money. At some point, Jackson was shot. Foxy Branch, who was living at that apartment at the time, testified that three men broke into the apartment, that numerous gunshots were fired, and that after the incident there was blood everywhere. Donald Ross of the Memphis Police Department testified that Appellant had admitted taking two men to this location on the night in question. This is clearly enough proof for the trial court to conclude by a preponderance of the evidence that Appellant was involved in this previous criminal act.

driving on a suspended license and simple assault. Thus, the trial court was clearly correct in applying factor (1) to the sentences for all of Appellant's convictions.

The trial court also applied factor (8), that the defendant has a previous history of unwillingness to comply with conditions of release into the community, to all of Appellant's convictions. See Tenn. Code Ann. § 40-35-114(8) (1997). However, the court did not give this factor much weight because it involved a misdemeanor sentence. Appellant does not challenge the application of this factor and we agree that the trial court was correct in applying it.

The trial court found that enhancement factor (2) applied to the convictions for the aggravated robbery and especially aggravated kidnapping of Dickson because Appellant was the leader in those two offenses. See Tenn. Code Ann. § 40-35-114(2) (1997). The court based its decision on the fact that Appellant had stated in his pre-trial confession that he was the one who tied Dickson up, took his necklace, and intended to take him across the hall to the other robbery. The court also based its decision on other evidence which established that Appellant was the one who took Dickson's gun. Appellant argues that the fact that Jeffries was the one who drove the car to the apartment and was the one who entered Dickson's apartment first shows that Appellant was not the leader. We disagree. This Court has stated that "enhancement for being a leader in the commission of an offense does not require that the defendant be the sole leader but only that he be 'a' leader." State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993) Further, "[b]oth of two criminal actors may be 'a leader in the commission of an offense.'" Id. Indeed, this Court found in Hicks that while the

-10-

co-defendant led the preparation, the defendant clearly led the perpetration and thus, both were leaders in the commission of aggravated robbery. Id. Thus, even if Jeffries led the preparation, as Appellant apparently claims, the trial court could still conclude that Appellant was the leader in the perpetration of the offenses against Dickson. Because we must review the trial court's determination that Appellant was a leader in these two offenses with a presumption of correctness, we conclude that the trial court was correct in applying factor (2).

The trial court found that enhancement factor (9), that Appellant possessed a firearm during the commission of an offense, only applied to the aggravated burglary of Pamplin's apartment. See Tenn. Code Ann. § 40-35-114(9) (1997). Appellant does not challenge the application of this factor and we agree that it was correctly applied because use of a firearm is not an element of the offense of aggravated burglary. See State v. Baker, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997).

The trial court found that enhancement factors (10) and (16), that Appellant had no hesitation in committing a crime when the risk to human life was high and that the crime was committed under circumstances under which the potential for bodily injury to the victim was great, applied only to the especially aggravated kidnapping of Dickson. See Tenn. Code Ann. § 40-35-114(10), (16) (1997). It is true that generally, a court could not apply these factors to enhance a sentence for especially aggravated kidnapping conviction because a high risk of death or bodily injury is inherent in the offense. See State v. Claybrooks, 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994) ("Although not a designated element of the offense,

-11-

any enhancement factor which is inherent in the offense itself may not be used to increase the defendant's sentence."). However, the Tennessee Supreme Court has stated that enhancement factors which are inherent in the nature of the offense may be applied to the sentence if they "demonstrate a culpability distinct from and appreciably greater that incident to the crime." State v. Poole, 645 S.W.2d 93, 98 (Tenn. 1997). In this case, the trial court expressly stated that it was not relying on Appellant's use of a gun when it found that these factors applied. The court stated that it found that these factors applied because Appellant and Jeffries had taken Dickson out of his apartment and thrown him into the second apartment knowing that there might be gunfire. We agree. By forcing Dickson into the second apartment ahead of themselves, knowing that there was a great possibility that he would be shot, Appellant and Jeffries demonstrated "culpability distinct from and appreciably greater than" that inherent in the crime itself. Dickson had already been subjected to risk of death or bodily harm when he was tied up at gunpoint and taken out of his apartment into the hall. By throwing him into the second apartment ahead of themselves and leaving him partially tied up while shots were being fired, Appellant and Jeffries greatly increased this risk beyond what was necessary to complete the especially aggravated kidnapping. The trial court correctly applied factors (10) and (16) to the sentence for this offense.[3]

In short, Appellant has not met his burden of showing that the trial court misapplied any enhancement factors. In addition, we cannot say that the trial

---

[3]Even if the facts had not demonstrated a culpability distinct from and appreciably greater than that incident to the crime, the trial court could still have applied theses factors because "[b]oth factors may be applied in situations where individuals other than the victim are in the area and are subject to injury." State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). In this case, Dickson's young daughter could easily have been injured during the kidnapping of her father and subsequent shooting in the next door apartment.

court abused its discretion in determining the length of each sentence.[4]  This issue has no merit.

## IV.  DISPARITY IN SENTENCES

Appellant contends that his sentence should be reduced because the trial court did not comply with the Sentencing Reform Act of 1989 when it sentenced him to a longer term of imprisonment than co-defendant Jeffries.[5]  Appellant cites the case of State v. Jenkins, 733 S.W.2d 528 (Tenn. Crim. App. 1987), as support for this proposition.  While it is true that this Court did state that the disparity in sentences in that case should be eliminated, this was because the disparity was unjustified.  Id. at 533.  Indeed, this Court has stated that under the 1989 Act, "

> [A] case-by-case approach to sentencing underlies this Act as a fundamental policy.  An individual criminal is sentenced based on the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.  Any case-by-case approach will embody discretion, since all of the appropriate factors and circumstances must be weighed and considered as a whole for the disposition of each case. But, [inequalities in sentences that are unrelated to a purpose of this chapter should be avoided.  The implication is that, while more uniformity of sentences is one goal of the Act . . . some justified disparity or inequality in sentences necessarily results from a case-by-case

---

[4]The trial court imposed a sentence of twenty-three years for the especially aggravated kidnapping of Dickson, ten years for the aggravated robbery of Dickson, and four years for the aggravated burglary of Dickson's apartment, with these three sentences to run concurrently.  The trial court imposed a sentence of life imprisonment for the first degree murder of Anderson, four years for the attempted aggravated robbery of Anderson, four years for the aggravated assault of Todd, four years for the aggravated assault of Pamplin, and five years for the aggravated burglary of Pamplin's apartment, with these five sentences to run concurrently.  The court then ordered the sentences for the crimes against Dickson to run consecutive to the crimes against Anderson, Todd, and Pamplin, for an effective sentence of life plus twenty-three years.

[5]Jeffries was sentenced to three years for the attempted aggravated robbery of Anderson, eight years for the aggravated robbery of Dickson, three years for the aggravated assault of Todd, three years for the aggravated assault of Pamplin, three years for the aggravated burglary of Dickson's apartment, three years for the aggravated burglary of Pamplin's apartment, fifteen years for the especially aggravated kidnapping of Dickson, and life imprisonment for the first degree murder of Anderson.  All sentences were ordered to be served concurrently.

method by which an offender receives the sentence he deserves but not a sentence greater than that . . . for the offense committed.

State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991) (quoting State v. Moss, 727 S.W.2d 229, 235–36 (Tenn. Crim. App. 1986)).  Thus, not all disparities in sentencing must be eliminated, only those that are unjustified require elimination.

In this case, the trial court gave several reasons why it was sentencing Jeffries and Appellant to different terms of imprisonment.  The court stated that Appellant's case was "completely different" from that of Jeffries' because in Appellant's case, the State had shown that Appellant had a previous history of committing similar "crimes involving weapons and danger."  Further, the court stated that while "Jeffries is extremely remorseful and has done everything he can to make up for what he did," "[Appellant's] whole attitude during the trial was one of 'Mr. Jeffries did everything.'"  The court also stated that while it believed that Jeffries was "not a danger to society," Appellant was "an extremely dangerous person, and for that reason, he needed the appropriate sentencing that he got to protect society from him."  The court also found that the enhancement factors in Jeffries case were "more than made up for by the fact that he is so remorseful."  We cannot say that the trial court was wrong in making these determinations.  Indeed, "[t]he trial court, as the trier of fact at sentencing hearings, has the opportunity to observe the manner and the demeanor of the witnesses.  Consequently, this Court gives great weight to the determinations made by the trial court concerning the credibility of the witnesses; and this Court will not interfere with the trial court's findings of fact in this regard unless the evidence contained in the record clearly preponderates against these findings."

State v. Melvin, 913 S.W.2d 195, 202 (Tenn. Crim. App. 1995). In short, we hold that the trial court was justified in sentencing Appellant and Jeffries to different terms of imprisonment.

In addition to justifiably imposing a longer term of imprisonment on Appellant, the trial court was also justified in ordering the consecutive sentencing of Appellant. Consecutive sentencing is governed by Tennessee Code Annotated § 40-35-115. The trial court may order consecutive sentencing if it finds that one or more of the required statutory criteria exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Further, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). In this case, the court found that the statute was satisfied because Appellant was a dangerous offender whose behavior indicates little or no regard for human life and he had no hesitation in committing an offense when the risk to human life was high. See Tenn. Code Ann. § 40-34-115(4) (1997). The court based this decision on the fact that Appellant had no hesitation in committing the crimes in this case after he had participated in the previous armed home invasion where one of his accomplices was shot. The court also found that consecutive sentencing was reasonably related to the offenses committed because of the way Appellant treated Anderson before he killed him and because armed home invasion is "one of the most horrible crimes that can be committed." The court also concluded that consecutive sentences would be the best way to protect society. Finally, although the trial court did not expressly state that it had

considered whether consecutive sentences were congruent with the general principles of sentencing, we conclude in our de novo review that this requirement is satisfied in this case. Thus, we hold that the trial court did not abuse its discretion when it imposed consecutive sentences on Appellant when it had not done so with Jeffries.

## V. DENIAL OF APPELLANT'S PRE-TRIAL MOTION

Appellant contends that the trial court erred when it denied his pre-trial motion for a list of the State's witnesses for the sentencing hearing. We agree. In fact, the Tennessee Supreme Court held in State v. Buck, 670 S.W.2d 600, 606 (Tenn. 1984), that it was error for a trial court to overrule the defendant's objection to the testimony of two witnesses during the sentencing hearing because the State had failed to list names of witnesses in response to the defendant's pre-pretrial motion for discovery. Further, this Court has previously stated that the State has a statutory duty to disclose the identity of the witnesses it intends to use. State v. Taylor, 661 S.W.2d 695, 699 (Tenn. Crim. App. 1983); State v. Ronald David Lee, No. 03C01-9410-CR-0039, 1995 WL 395840, at *7 n.2 (Tenn. Crim. App., Nashville, July 6, 1995).

However, the fact that the trial court erroneously denied Appellant's motion does not mean that he is automatically entitled to relief. Indeed, the State's statutory duty to disclose witness names is merely directory, not mandatory. State v. Harris, 839 S.W.2d 54, 68 (Tenn. 1992). "The determination of whether to allow [an undisclosed] witness is left to the sound discretion of the trial judge." State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1997). "A defendant

-16-

will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage." Id. Appellant has failed to show how he was prejudiced by the nondisclosure of the names of witnesses to be called at the sentencing hearing. In his brief, Appellant only challenges the testimony of the State's witnesses regarding Appellant's participation in another armed robbery for which he was not convicted. However, the record reveals that Appellant's trial counsel ably cross-examined these witnesses. Further, there is nothing in the record that indicates that Appellant's trial counsel objected to the testimony of these witnesses on nondisclosure grounds. Appellant has failed to show what more he could or would have done if he had known the names of these witnesses before trial. What Appellant really appears to be concerned with is the substance of the witnesses' testimony, not the fact that their names were not disclosed before trial. However, "[I]n this context, it is not the prejudice which resulted from the witness' testimony but the prejudice which resulted from defendant's lack of notice which is relevant to establish prejudice." Id. In short, Appellant has failed to show that any prejudice resulted for nondisclosure and he has not even alleged bad faith or undue advantage. We see no abuse of discretion by the trial judge in allowing these witnesses to testify.

Accordingly, the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE

-17-

CONCUR:

_____
DAVID H. WELLES, JUDGE


_____
JOHN K. BYERS, SENIOR JUDGE