IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. JOHN BRADLEY LOWERY

**Direct Appeal from the Criminal Court for Knox County**
**No. 62316     Ray L. Jenkins, Judge**

_____

**No. E1998-00034-CCA-R3-CD - Decided June 12, 2000**

_____

A Knox County jury convicted the appellant, John Bradley Lowery, of one (1) count of premeditated first degree murder and one (1) count of attempted first degree murder. The appellant was sentenced as a Range I offender to consecutive terms of life imprisonment for first degree murder and twenty-five (25) years for attempted murder. On appeal, the appellant presents the following issues for this Court's review:

(1) whether the evidence is sufficient to sustain his convictions;

(2) whether the trial court erred in refusing to allow defense witness, Christy Horner, to testify as to state witness, Mary Santos', reputation for truthfulness;

(3) whether the trial court imposed an excessive sentence for his attempted first degree murder conviction; and

(4) whether the trial court erred in imposing consecutive sentences.

After a review of the record we hold that the evidence is sufficient to sustain the convictions, that the trial court properly excluded the testimony of Christy Horner as to the reputation for truthfulness of state witness Mary Santos, and that the length and manner of service of the appellant's sentences are proper. Accordingly, the judgment of the trial court is affirmed.

**T.R.A.P. 3 Appeal as of Right; Judgment of the Criminal Court of Knox County is Affirmed.**

SMITH, J., delivered the opinion of the court, in which TIPTON, J., JOINED and WOODALL, J., Concurred in Results Only.

Julie A. Rice, Knoxville, Tennessee attorney for the appellant, John Bradley Lowery.

Paul G. Summers, Attorney General & Reporter, Erik W. Daab, Assistant Attorney General, Randall E. Nichols, District Attorney General and Robert L. Jolley, Jr., Assistant District Attorney, attorneys for the appellee, State of Tennessee.

# OPINION

At approximately 6:40 a.m. on October 8, 1996, William Boatwright and his cousin, Vincent Hartsell, went to Kirk's Market in Knoxville to purchase food items. Boatwright went inside the market, while Hartsell remained in the car. After Boatwright made his purchase, he walked outside, and Jay Harris, who was standing outside, called him to the side of the building so that they could converse. After Boatwright spoke with Harris for a few seconds, he heard a gunshot. When he turned around, he saw the appellant running towards him carrying a handgun. As Boatwright attempted to reenter the store, the appellant shot him in the chest. Boatwright went inside the store and crawled behind the counter, and the appellant went inside after him, firing his gun. However, because the store employee began screaming, the appellant fled the scene. Boatwright remained in the store for several minutes and then went outside to check on Hartsell, who had been shot in the neck while waiting in the car.

Malik Hardin, a friend of Boatwright and Hartsell, witnessed the shooting while sitting in his car in the Kirk's Market parking lot. Boatwright got into Hardin's car and drove to a relative's home, while Hardin stayed with Hartsell until the police arrived.

Boatwright was subsequently transported to the hospital, where he told the police that "J.B." shot Hartsell and him. The police compiled a photographic lineup, and Boatwright identified the appellant as the shooter. Hardin also viewed the photographic lineup and identified the appellant as the man who shot Boatwright and Hartsell.

The next day, Hartsell, who was sixteen (16) years of age, died as a result of a gunshot wound to the neck.

Investigating officers recovered a .45 caliber bullet behind the counter in the store as well as a .45 caliber shell casing in front of the store counter. The police also discovered a bullet hole in the counter. Another .45 caliber bullet casing was found in the car where Hartsell was shot, and officers found an "eight ball" of crack cocaine by the right passenger door. Don Carman, a TBI forensic firearms examiner, examined the bullet casings and determined that the casing found in the store and the casing found in the car were fired from the same weapon.

James Bowman, a friend of appellant's family, gave a statement to police officers shortly after the incident. In his statement, Bowman told officers that, just prior to the shooting, he brought his stepdaughter to Kirk's Market so that she could purchase a drink before school. While his stepdaughter was inside the market, the appellant[1] got into Bowman's car and began telling Bowman that he had been robbed earlier that morning.[2] Suddenly, a car pulled beside them, and the appellant told Bowman that the men who robbed him were in the car. The appellant then got out of the car

---

[1] Bowman testified at trial that he only "thought" the man was the appellant; however, he acknowledged that he previously identified the appellant as the man who got into his car on the morning of October 8.

[2] The state presented proof at trial that at approximately 3:30 a.m. on October 8, the appellant filed a complaint with the police department stating that he had been robbed at gunpoint earlier that morning by three (3) masked, young, black males.

and told his brother, Fred Lowery, and his cousin, Jay Harris, "[t]hat's it, boys, right here." When the appellant, Fred Lowery and Harris surrounded the building, Bowman left with his stepdaughter. Bowman dropped his stepdaughter off at school, and when he drove past Kirk's Market on his way home, Boatwright and Hartsell had been shot.

The state also presented the testimony of Mary Santos, who had previously been romantically involved with the appellant's uncle, Walter Lowery. Santos testified that Walter hired the appellant and the victim, Vincent Hartsell, to sell drugs for him. She stated that in late Spring or early Summer 1996, the appellant and Walter were angry with Hartsell over a botched drug sale.[3] Santos testified that, on several occasions, the appellant stated that he would kill Hartsell in retaliation.

The appellant presented an alibi defense at trial. Fred Lowery, Jay Harris and Greg Moore testified that they were at Kirk's Market during the shooting on October 8. None of these witnesses saw the person who shot Boatwright and Hartsell, but all testified that the appellant was not present during the shooting. In addition, Tamera McMillan, the appellant's neighbor, testified that the appellant was at her home during the time of the shooting.

The jury returned the appellant guilty of one (1) count of premeditated first degree murder and one (1) count of attempted first degree murder. The appellant was sentenced to consecutive terms of life imprisonment for first degree murder and twenty-five (25) years for attempted first degree murder. From his convictions and sentences, the appellant now brings this appeal.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, the appellant claims that the evidence is insufficient to sustain the jury's verdict of guilt. First, he argues that the state did not prove beyond a reasonable doubt that he was the perpetrator of the crime. Secondly, he contends that the state failed to present sufficient evidence of premeditation.

### A.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d at 779.

A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the

---

[3] Apparently, the appellant sold some cocaine to Hartsell, who was supposed to sell the cocaine to the intended buyer. However, prior to making the sale, Hartsell replaced the cocaine with powdered sugar.

state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d at 75. Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id.

**B.**

First degree murder is defined as the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). A person commits the offense of attempted first degree murder when,

> acting with the kind of culpability otherwise required for [first degree murder] . . . [he] [a]cts with intent to complete a course of action or cause a result that would constitute [first degree murder], under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of [first degree murder].

Tenn. Code Ann. § 39-12-101(a)(3).

**C.**

The state presented proof at trial that the appellant was robbed by three young, black males in the early morning hours of October 8. Immediately prior to the shooting, James Bowman spoke with the appellant about the robbery, and when Boatwright and Hartsell pulled into the parking lot beside them, the appellant pointed out Boatwright and Hartsell as two of the robbers. The appellant then got out of Bowman's car and told Fred Lowery and Jay Harris, "[t]hat's it, boys, right here."

Boatwright testified at trial that he went into Kirk's Market to purchase food items and, as he was walking outside, Jay Harris called him over to the side of the building. After he and Harris spoke for a few seconds, Boatwright heard a gunshot. He then saw the appellant running towards him while carrying a weapon. As Boatwright attempted to reenter the store, the appellant shot him in the chest. Boatwright ran inside the market, and the appellant followed him firing again. After firing his weapon in the store, the appellant fled the scene.

Subsequently, Boatwright identified the appellant as the shooter from a photographic lineup. Malik Hardin, an eyewitness to the shooting, also identified the appellant from the photo lineup. Vincent Hartsell died on the following day as a result of a gunshot wound to the neck.

**D.**

The appellant challenges the sufficiency of the convicting evidence in two different respects. First, he argues that the state failed to establish that the appellant was the perpetrator of the offenses on the morning of October 8. He claims that the state presented no credible witness who could testify that he saw the appellant fire a gun. In addition, he refers to numerous alibi witnesses who testified that the appellant was not present during the shooting.

However, it is well-settled that the identification of a defendant as the perpetrator of the crime is a question of fact for the jury to determine. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Both Boatwright and Hardin identified the appellant as the shooter from the photographic lineup and at trial. In addition, James Bowman told police officers shortly after the incident that the appellant was at Kirk's Market prior to the shooting. Although the appellant presented numerous alibi witnesses who testified that the appellant was not present during the

shooting, the jury obviously accredited the testimony of the state's witnesses instead. This Court is not free to second-guess the jury's determination in this regard. Thus, the state presented sufficient evidence to establish the appellant's identity.

Secondly, the appellant argues that the state failed to present sufficient evidence of premeditation. Premeditation is "an act done after the exercise of reflection and judgment" and "means that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). Premeditation is an issue of fact for the jury to determine and may be inferred from circumstances surrounding the killing. State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993).

In the present case, the state presented evidence, through the testimony of Mary Santos, that the appellant announced his intention to kill the victim, Vincent Hartsell, on several occasions as a favor to Walter Lowery, the appellant's uncle. Furthermore, the appellant was robbed approximately three (3) hours prior to the shooting by three (3) young, black men. After identifying Boatwright and Hartsell as two (2) of the men who robbed him, the appellant told Fred Lowery and Jay Harris, "[t]hat's it, boys, right here." The three (3) men then surrounded the building, and as Boatwright exited the store, Harris distracted him for a few seconds while the appellant shot Hartsell as he sat in a vehicle. The appellant then shot Boatwright once in the chest. The state presented evidence demonstrating the appellant's motive and planning for the shooting, Further, the circumstances surrounding the offense indicates that the appellant shot the victims "according to a preconceived design." State v. Schafer, 973 S.W.2d 269, 273 (Tenn. Crim. App. 1997). Thus, this Court is convinced that the state presented sufficient evidence for a jury to properly infer that the appellant, with premeditation, intentionally killed Hartsell and attempted to kill Boatwright.

This issue is without merit.

## TESTIMONY OF CHRISTY HORNER

In his next issue, the appellant alleges that the trial court erred in refusing to allow defense witness, Christy Horner, to testify as to Mary Santos' reputation for truthfulness. Appellant sought to impeach Santos, as she testified that, on several occasions, the appellant stated his intention to kill Vincent Hartsell as a favor to his uncle, Walter Lowery. The appellant claims that Horner should have been allowed to testify at trial that Santos is a "compulsive liar." He maintains that this testimony was properly admissible under Tenn. R. Evid. 608(a), and the trial court abused its discretion in refusing to allow Horner to testify.

At trial, Mary Santos was questioned concerning her prior romantic relationship with the appellant's uncle. At that time, Santos and Walter Lowery had a custody dispute pending in the court system. During cross-examination, defense counsel asked Santos whether she had ever persuaded her children to testify falsely in court on her behalf. Santos replied that she had not.

After the state rested its case-in-chief, the defense attempted to present the testimony of Christy Horner, Santos' daughter. Defense counsel advised the trial court that Horner was being called to rebut Santos' testimony that she never asked her children to testify falsely in court. The state objected to Horner's testimony, and the trial court sustained the state's objection.

Rule 608(b) of the Tennessee Rules of Evidence provides, in pertinent part:

Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609,

may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified.

Thus, specific instances of conduct which are probative of truthfulness or untruthfulness "may be asked about on cross-examination and the witness's answers must be taken as given." N. Cohen, S. Sheppeard, & D. Paine, Tennessee Law of Evidence, § 608.4 at 350 (3d ed. 1995). However, "[o]ther witnesses cannot be called to rebut the first witness's responses." Id. (emphasis added); *see also* State v. West, 844 S.W.2d 144, 149 (Tenn. 1992).

In the present case, defense counsel questioned Santos regarding whether she had asked her children to testify falsely in court on her behalf, and Santos denied this allegation. Defense counsel then sought to introduce the testimony of Christy Horner for the purpose of rebutting Santos' testimony on this matter. Clearly, this testimony was improper "extrinsic evidence" under Tenn. R. Evid. 608(b).

The appellant concedes that the trial court properly excluded any testimony concerning specific instances of conduct under Tenn. R. Evid. 608(b). However, he argues that, because Horner referred to her mother as "a compulsive liar" during a proffer, Horner should have been allowed to testify as to Santos' reputation for truthfulness. *See* Tenn. R. Evid. 608(a). However, the appellant never attempted to introduce opinion testimony under Rule 608(a). Rather, defense counsel made it clear that "the only thing [he hoped] to introduce through [Horner]" was that Santos induced Horner to perjure herself during the court proceedings, thus rebutting Santos' testimony to the contrary.

The admissibility of evidence is a decision that rests within the discretion of the trial court, and this Court will not reverse a trial court's determination absent an abuse of discretion. State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). This court will not find an abuse of discretion in excluding evidence where the proponent of the evidence proffers the evidence under one theory of admissibility, the trial court properly excludes the evidence, and then on appeal the proponent of the evidence changes the theory under which the evidence may be admissible. *See* State v. Adkisson, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994); N. Cohen, S. Sheppeard & D. Paine, Tennessee Law of Evidence, § 103.3 at 17-18 (3rd ed. 1995).

This issue has no merit.

## SENTENCING

In his final two issues, the appellant contends that the trial court imposed an improper sentence. First, he argues that the sentence of twenty five (25) years for his attempted first degree murder conviction is excessive, as the trial court applied inappropriate enhancement factors to his sentence. Additionally, he claims that the trial court erroneously ordered consecutive sentences.

**A.**

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption

-6-

of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing;

(2) [t]he presentence report;

(3) [t]he principles of sentencing and arguments as to sentencing alternatives;

(4) [t]he nature and characteristics of the criminal conduct involved;

(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and

(6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

**B.**

In imposing the appellant's sentence, the trial court found the existence of six (6) statutory enhancement factors: (1) that the appellant had a previous history of criminal convictions or criminal behavior, Tenn. Code Ann. § 40-35-114(1); (2) that the appellant had a previous history of unwillingness to comply with the conditions of release into the community, Tenn. Code Ann. § 40-35-114(8); (3) that the appellant used a firearm during the commission of the offenses, Tenn. Code Ann. § 40-35-114(9); (4) that the appellant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10); (5) that the appellant committed the offenses while on probation for another offense, Tenn. Code Ann. § 40-35-114(13)(C); and (6) that the offenses were committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16). The trial court found no mitigating factors to be applicable, in part because of the appellant's failure to suggest any applicable mitigating factors. As a result, the trial court imposed the maximum sentence of twenty five (25) years for attempted first degree murder.

The trial court further determined that consecutive sentencing was appropriate under Tenn. Code Ann. § 40-35-115. Specifically, the court found that: (1) the appellant was "an offender whose record of criminal activity is extensive," Tenn. Code Ann. § 40-35-115(b)(2); (2) the appellant is a "dangerous offender whose behavior indicates little or no regard for human life," Tenn. Code Ann. § 40-35-115(b)(4); and (3) the appellant committed the present offenses while on probation, Tenn. Code Ann. § 40-35-115(b)(6). Thus, the trial court ordered that the appellant's sentence for

-7-

attempted first degree murder run consecutively to his life sentence for premeditated first degree murder.

## C.

The appellant alleges that the trial court imposed an excessive sentence for his attempted first degree murder conviction. He argues that the trial court misapplied two (2) enhancement factors and failed to consider the applicable mitigating factors. Therefore, he contends that his sentence should be reduced below the maximum.

The presumptive sentence for a Class A felony is the midpoint of the applicable range. Tenn. Code Ann. § 40-35-210(c). If enhancement and/or mitigating factors do exist, a trial court should start at the presumptive sentence, enhance the sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as its findings are supported by the record. State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

The appellant concedes that the trial court appropriately applied enhancement factors (1), (8), (9), and (13). However, he argues that the trial court misapplied Tenn. Code Ann. § 40-35-114(10) and (16) to his sentence for attempted first degree murder. He claims that a high risk to human life and a great potential for bodily injury are necessarily inherent in the offense of attempted first degree murder. Therefore, he maintains that these enhancement factors are essential elements of the offense, and the trial court erred in considering them.

This Court has previously held that Tenn. Code Ann. § 40-35-114(10) and (16) should not be applied to a sentence for attempted first degree murder because a high "risk to human life and the great potential for bodily injury always exist with an attempted first degree murder." State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). However, when the evidence shows that others are present who are subject to injury during the commission of the offense, application of Tenn. Code Ann. § 40-35-114(10) is appropriate. State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994).

In the present case, the state presented evidence that individuals other than Boatwright and Hartsell were outside Kirk's Market during the shooting. Furthermore, the appellant fired his gun inside the store, and Boatwright testified that a female store employee was behind the store counter during the incident. A .45 caliber bullet fired from the appellant's weapon was found behind the counter during the police investigation. The appellant acknowledges that others were present during the shooting, but insists that because the appellant shot his intended targets, Boatwright and Hartsell, no other individual was at risk of harm from the appellant's actions. We respectfully disagree. When a person fires a loaded weapon at an individual and others are in the vicinity of the gunfire, such as the store employee in this case, that person is necessarily subjecting the other individuals to a risk of harm. Thus, the trial court properly applied Tenn. Code Ann. § 40-35-114(10).

The trial court also considered factor (16) applicable because of the risk of injury to bystanders at the crime scene. We acknowledge this Court has previously held this factor is also properly applicable "in situations where individuals other than the victim are in the area and are subject to injury." State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App.), perm. to app. denied (Tenn. 1995). However, some months prior to the Court's holding in Sims this Court had also decided the

case of State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995); in which a different panel found that factor (16) could not be applied to a sentence for vehicular homicide since the creation of a substantial risk of serious bodily injury to a victim was an essential element of the offense of vehicular homicide. Id. at 452. Conversely, the Bingham opinion does allow factor (10), conduct that establishes a "high risk to human life", to be applied to the vehicular homicide conviction since this factor may be used in a case where the defendant's conduct creates a risk to the life of persons other than the victim of the crime. Id. at 453.

Thus, Bingham clearly implies that factor (16) is not an appropriate enhancement factor where the defendant's crime creates a risk of serious bodily injury to persons other than a victim of the crime.

While Sims does not expressly reject Bingham with regard to the applicability of factor (16) in cases where the defendant's actions created risk of harm to bystanders as opposed to victims, the inconsistency in the two cases is apparent. In resolving this inconsistency for purposes of the case sub judice we find it instructive to look at the precise language of the statute involved. Tennessee Code Annotated Section 40-35-114 provides in pertinent part:

> If appropriate for the offense, enhancement factors, if not themselves essential elements of the offense as charged in the indictment, may include:
>
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high;
>
> (16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great (emphasis supplied)

It is apparent from the plain language of the statute that enhancement factor (10) does not limit the class of individual to which the defendant's conduct must create a risk before application of factor (10) is proper. It is equally apparent that factor (16) restricts its application to "a victim". We are constrained by the plain language of Tennessee Code Annotated Section 40-35-114(16) to hold that application of factor (16) is proper only where the potential for serious bodily injury is created for a victim of the defendant's criminal conduct. Factor (16) may not be supported by a showing of such potential harm only to a bystander. We reject that portion of the opinion in Sims which holds to the contrary.

In any event, in the instant case, it is clear from the record that the trial court considered factors (10) and (16) as one factor. Clearly, the trial court did not give factor (16) additional weight. Because we do not believe that the trial court further enhanced the appellant's sentence on the basis of Tenn. Code Ann. § 40-35-114(16), the erroneous application of this enhancement factor did not affect the appellant's sentence to his detriment.

The appellant also contends that the trial court failed to consider applicable mitigating factors when imposing sentence. However, the appellant failed to suggest any applicable mitigating factors prior to or during the sentencing hearing. In any event, even if this Court were to find that the

appellant's suggested mitigating factors[4] should be applicable, we do not believe these mitigating factors sufficiently outweigh the applicable enhancement factors to warrant a reduction in the appellant's sentence. After reviewing the record before this Court, we conclude that the trial court imposed an appropriate sentence of twenty five (25) years for the appellant's attempted first degree murder conviction.

This issue has no merit.

### D.

In his final issue, the appellant challenges the trial court's imposition of consecutive sentences. Specifically, he argues that the trial court erroneously determined that he is a dangerous offender and that he has an extensive criminal history which would warrant consecutive sentences. *See* Tenn. Code Ann. § 40-35-115(b)(2), (4).

Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. A trial court may order sentences to run consecutively if it finds that one or more of the statutory criteria exists by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Under Tenn. Code Ann. § 40-35-115(b)(6), a trial court may impose consecutive sentences after determining that the appellant committed the offenses while on probation for another offense. It is undisputed that the appellant committed the present offenses while he was on probation for an offense committed in 1992. Thus, because the trial court need only find one of the statutory criteria to exist to justify consecutive sentencing, the trial court's imposition of consecutive sentences was clearly proper in this case.[5]

This issue has no merit.

### CONCLUSION

After thoroughly reviewing the record before this Court, we conclude that there is no reversible error. Accordingly, the judgment of the trial court is affirmed.

---

[4] On appeal, the appellant suggests that his participation in a drug treatment program while incarcerated should have been considered as a mitigating factor by the trial court. As an additional mitigating factor, the appellant notes that he "had begun studying for his general equivalency diploma." *See* Tenn. Code Ann. § 40-35-113(13).

[5] Because consecutive sentencing was proper under the statute, this Court need not determine whether the trial court erred in finding that the appellant had an extensive record of criminal activity under Tennessee Code Annotated section 40-35-115(b)(2) or that the appellant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4).