IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs  December 18, 2001

## STATE OF TENNESSEE v. JAMES LEE PARTON

**Direct Appeal from the Circuit Court for Sevier County**
**No. 8158    Richard R. Vance, Judge**

**No. E2001-00835-CCA-R3-CD    Filed April 9, 2002**

Defendant pled guilty to one count of aggravated vehicular homicide, a Class A felony, and two counts of vehicular assault, a Class D felony.  Defendant was ordered to serve consecutive sentences of twenty-four years for aggravated vehicular homicide, and three years for each count of vehicular assault, for an effective sentence of thirty years.  Defendant challenges his sentence, raising the following three issues on appeal: (1) whether the trial court erred by refusing to allow mitigation for Defendant's severe, debilitating alcoholism; (2) whether the trial court erred by imposing the near-maximum sentence on each conviction; and (3) whether the trial court erred by ordering all three sentences to be served consecutively.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and ROBERT W. WEDEMEYER, JJ., joined.

Edward C. Miller, District Public Defender; and Susanne Bales, Assistant Public Defender, Dandridge, Tennessee, for the appellant, James Lee Parton.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Charles E. Atchley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

On May 16, 2000, at approximately 4:30 p.m., Ray Reynolds and his wife Patricia Reynolds were traveling with their son, Casey, to a little league baseball game.  Their car, driven by Mr. Reynolds, was traveling north along Highway 416, also known as Pittman Center Road.  Patricia

Reynolds was in the front passenger seat, and their son Casey was in the rear. As the Reynolds approached a curve in the road known as Mitchell's Bottom, the couple noticed Defendant's truck traveling south on Pittman Center Road. Mrs. Reynolds testified that she remembered Defendant's vehicle because as it rounded Mitchell's Bottom, the rear wheels "slid off the road." Then, Defendant's truck veered into their lane of traffic and collided head-on with their car. Mrs. Reynolds testified that after the impact, she was temporarily rendered unconscious. When she regained consciousness, she looked over and saw her husband in a pool of blood and "in very bad shape." Casey, who was also conscious, witnessed his father's condition. Ray Reynolds died before emergency personnel arrived, and Patricia and Casey Reynolds were severely injured. After the accident, Casey was hospitalized for approximately five to seven days because of a torn bowel. Mrs. Reynolds suffered a broken elbow and a broken wrist, and her knuckles were crushed by the impact. Mrs. Reynolds testified that she still experiences constant pain from her injuries and has not regained much use of her arm. She was also in rehabilitation for three months. Mrs. Reynolds further testified that she had been married to Ray Reynolds for sixteen years and that his death "devastated [her] life." She requested that the court impose the maximum possible sentence of thirty-three years.

Trooper William Fox of the Highway Patrol investigated the accident scene. A blood test revealed that at the time of the accident, Defendant's blood-alcohol level was .31. Inside the Defendant's vehicle, he discovered one partially-filled beer can. He also found two empty beer cans alongside a beer cooler that was thrown out of the back of Defendant's truck.

Jim Parton, Defendant's father, testified on his son's behalf. Mr. Parton testified that he noticed his son's alcohol problem at the age of fifteen, and that his addiction to alcohol had grown progressively worse. Mr. Parton testified that when his son was not drinking, he was a loving and caring person who was faithful to his church and had a "strong faith." He testified that his son had made many unsuccessful attempts to overcome his addiction in the past, and had been through four rehabilitation programs and a halfway house. He further stated that his son was scheduled to leave for a rehabilitation program in Alabama, which was to begin on May 17, 2001, the day after the accident. He also stated that his son had been very remorseful over Mr. Reynold's death.

Also testifying on Defendant's behalf were Rev. Clyde Martin, Defendant's pastor, and Penny Kassinger, one of Defendant's long-time friends. Both witnesses testified positively to Defendant's good character when he was not consuming alcohol, and of Defendant's repeated attempts to overcome his addiction. Ms. Kassinger also testified that Defendant stated "he wished he could give his life in exchange for Mr. Reynolds."

Leslie Parton, Defendant's daughter, also testified of how Defendant was a good father and a loving grandfather. She testified that when Defendant learned that Ray Reynolds had died, he stated, "pray that I die because I don't want to live knowing that I killed somebody." The defense also introduced evidence of Defendant's medical history, and his severe alcoholism.

Although he did not testify, at the close of the evidence, Mr. Parton made the following statement in open court: "To the Reynolds family, especially Patricia Reynolds and her son, I'm sorry. I never intentionally meant to hurt anyone and if I could change things I would."

## ANALYSIS

When the defendant challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review of the record with a presumption that the determinations made by the sentencing court were correct. See Tenn. Code Ann. §§ 40-35-401(d), -402(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, this court must consider (a) all the evidence at trial and the sentencing hearing, (b) the presentence report, (c) the sentencing principles, (d) the arguments of counsel, (e) the nature and characteristics of the offenses, (f) any statutory mitigating and enhancement factors, (g) any statement that the Defendant made on his own behalf, and (h) the defendant's potential for rehabilitation. See Tenn. Code Ann. §§ 40-35-102, -103, -210(b) (1997). The burden of showing that a sentence was improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. Because the record in this case indicates that the trial court properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness.

I.     Mitigating Factor

In his first issue, Defendant argues that the trial court erred by refusing to consider his "debilitating alcoholism" in mitigation. Specifically, Defendant contends that his alcoholism was a "mental condition that reduced his culpability for the offense . . . [and] his addiction was so overwhelming that as to render the consumption of alcohol involuntary." See Tenn. Code Ann. § 40-35-113(8) (1997). We disagree.

Tennessee Code Annotated section 40-35-113(8), states that the court may mitigate a defendant's sentence upon proof that at the time of the offense, "the defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor." Therefore, Defendant's alcohol addiction, and voluntary intoxication, was not a mental or physical condition that reduced his culpability under section 40-35-113(8). See State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Defendant is not entitled to relief on this issue.

II.    Imposition of Sentence

Next, Defendant argues that the trial court erred by imposing the near-maximum sentence. Specifically, he contends that the trial court failed to give adequate weight to the following

mitigating factors: (1) his mental condition, i.e., alcoholism, and (2) his genuine remorse. We disagree.

In sentencing, if no enhancement or mitigating factors exist, the presumptive sentence for Class B, C, D, or E felonies shall be the minimum sentence in the range, and the presumptive sentence for a Class A felony is the midpoint of the range. See Tenn. Code Ann. § 40-35-210(c) (1997). Where one or more enhancement factors apply but no mitigating factors exist, the trial court may sentence above the presumptive sentence, but still within the range. See Tenn. Code Ann. § 40-35-210(d) (1997). Should both enhancement and mitigating factors exist, the trial court must begin sentencing at the presumptive sentence (i.e., the midpoint of the range for Class A felonies and the minimum sentence in the range for Class B, C, D, and E felonies), enhance the sentence within the range as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. See id. at § 40-35-210(e) (1997). To facilitate meaningful review, a trial court's final sentencing decision must "identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence." State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994). If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

Defendant was convicted of the offenses of aggravated vehicular homicide, a Class A felony, and two counts of vehicular assault, a Class D felony. Tenn. Code Ann. §§ 39-13-218, 39-13-106 (1997). Defendant was a Range I offender. Under Tennessee law, the applicable range for a Range I, standard offender is fifteen to twenty years for a Class A felony, and two to four years for a Class D felony. Tenn. Code Ann. § 40-35-112(a)(1), (4) (1997). According to the statute, the trial court began sentencing at the presumptive sentence of twenty years for the aggravated vehicular homicide, and two years for each count of vehicular assault. See Tenn. Code Ann. § 40-35-210(e). Then, the trial court enhanced within the range as appropriate for the enhancement factors, and then reduced the sentences based on the mitigating factors. See id. Considering the foregoing, Defendant was sentenced to twenty-four years for aggravated vehicular homicide and three years for each of the two counts of vehicular assault.

With respect to the presence of mitigating factors, we agree with the trial court's rejection of Defendant's alcoholism as a mitigating factor that reduced his culpability. See Tenn. Code Ann. § 40-35-113(8); State v. Black, 924 S.W.2d at 917. The record further reveals that the trial court considered Defendant's remorse, and other factors, in mitigation:

> The Court does find that based upon the testimony, the evidence presented that this defendant is genuinely remorseful. He is sorry, not only for what he's done to the Reynolds family but what he's done to his own family by his own conduct. He is in very poor health. He had injuries in this collision. He has very poor health as a result of years of alcohol abuse. He had previously borne good character as

-4-

expressed by the witnesses and things that he has done. He's been a caring father to his children, a caring grandfather to his grandchildren. Those are all to his credit.

Although not directly challenged by Defendant, our de novo review includes the trial court's application of enhancement factors (1) and (8) to determine whether Defendant's "near-maximum sentence" was excessive. Defendant's sentence was enhanced upon a finding that: (1) Defendant had a previous history of criminal behavior or convictions in addition to those necessary to establish the appropriate sentencing range, and (8) Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(1), (8) (1997). The court further stated that each factor alone would justify imposition of the maximum sentence, and that Defendant's extensive criminal history was the major sentencing factor.

From a review of the records, we find that Defendant's sentence was properly enhanced based upon factors (1) and (8). In regards to enhancement factor (1), the presentence report revealed that Defendant had an extensive criminal history that spanned thirteen years. Although Defendant had not previously been convicted of any felonies, he was convicted of misdemeanors including disorderly conduct, driving on a revoked license, and violating the bad check law. The record also reflects that Defendant had been convicted five times for driving under the influence and seven times for public intoxication. Furthermore, the trial court also found that enhancement factor eight (8) was applicable in that Defendant committed most of the prior offenses while on probation for other offenses.

Essentially, Defendant's argument that the trial court erred by imposing the near-maximum sentence for each conviction is an assertion that the trial court erroneously afforded too much weight to the enhancement factors and too little weight to the mitigating factors. However, it is well-settled that the weight to be afforded sentencing factors is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995). We find that the trial court's decision meets this standard. Therefore, we conclude that the lengths of the sentences in this case were entirely appropriate. Defendant is not entitled to relief on this issue.

III.    Consecutive Sentencing

Finally, Defendant challenges the trial court's imposition of consecutive sentences. Tennessee Code Annotated section 40-35-115 provides certain criteria which authorize consecutive sentencing. The trial court may order consecutive sentencing if a defendant is charged with more than one criminal offense and if it finds, by a preponderance of the evidence, that one or more of the required statutory criteria exist. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments (1997). These criteria include a finding by the court that the defendant is a "dangerous offender." Id. at § 40-35-115(b)(4). A dangerous offender is defined as one "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the

risk to human life is high." <u>Id.</u> The dangerous offender classification, as has been previously observed, is subjective in nature. <u>See</u> <u>State v. Howell</u>, 34 S.W.3d 484, 515 (Tenn. Crim. App. 2000).

We agree with the trial court's determination that Defendant is a dangerous offender with little regard for human life and no hesitation about committing a crime in which the risk to human life is high. The record reveals that at the time of the accident, Defendant was operating a motor vehicle, on a public highway, with a blood alcohol content that was three times above the level where intoxication can be inferred. <u>See</u> Tenn. Code Ann. §§ 55-10-401, -408. This act, coupled with Defendant's lengthy history of drinking and driving, shows that Defendant has little or no regard for human life and no hesitation to commit a crime in which the risk to human life is high. Also, Defendant was scheduled to be admitted to an inpatient treatment program for his alcoholism on the day <u>after</u> the fatal wreck. Defendant's criminal conduct knowing that he was one day away from "getting help" is further evidence that he is a "dangerous offender." When the trial court uses the "dangerous offender" factor, it must also conclude that consecutive sentences (1) reasonably relate to the severity of the offenses committed; (2) serve to protect the public from further serious criminal conduct by the offender; and (3) are congruent with general sentencing principles. <u>State v. Wilkerson</u>, 905 S.W.2d 933, 939 (Tenn. 1995); <u>State v. Lane</u>, 3 S.W.3d 456, 461 (Tenn. 1999). We find that an aggregate thirty-year sentence bears a reasonable relationship to the seriousness of the offenses, in which a life was lost and serious bodily injuries suffered, is necessary to protect the public from future criminal acts by the Defendant, and is congruent with general sentencing principles. <u>See</u> <u>Wilkerson</u>, 905 S.W.2d at 939. Thus, consecutive sentencing was appropriate under Tennessee Code Annotated section 40-35-115(b).

## CONCLUSION

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE