**STATE of Tennessee, Appellee,**

v.

**Frederick O. BLACK, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 19, 1995.

Permission to Appeal Denied
March 4, 1996.

J. Thomas Marshall, Jr., District Public Defender, Clinton, for Appellant.

Charles W. Burson, Attorney General & Reporter, Hunt Brown, Assistant Attorney General, Criminal Justice Division, Nashville, James N. Ramsey, District Attorney General, Jan Hicks, Asst. Dist. Attorney General, and John Maddox, Asst. Dist. Attorney General, Clinton, for Appellee.

## OPINION

SUMMERS, Judge.

The appellant, Frederick O. Black, was convicted by a jury of evading arrest and unlawful possession of a handgun. He was sentenced as a Range I standard offender to two (2) years imprisonment for the handgun offense and to eleven (11) months and twen-

ty-nine (29) days for evading arrest. The trial court set his sentences to run consecutively. Black now appeals, presenting for our review the following issues: (1) whether the evidence adduced at trial is sufficient as a matter of law to sustain his convictions; (2) whether the trial court adequately instructed the jury with regard to the requisite *mens rea* for the crime of evading arrest; and (3) whether the trial court sentenced him improperly. Having thoroughly considered these issues, we find no error in the judgment of the trial court. We will discuss each issue in turn after a brief narration of the facts.

## FACTS

The series of events which led to the appellant's arrest began when the appellant approached Kip Ewing, an employee of Kentucky Fried Chicken, in the parking lot of the restaurant. The appellant and Mr. Ewing argued, and the appellant left the parking lot.

The appellant maintains that Mr. Ewing owed him money for a .38 caliber derringer which the appellant had obtained illegally and sold to Mr. Ewing. Mr. Ewing kept the gun for some time and, while he had paid the appellant part of the agreed price, refused to surrender the balance when confronted by the appellant. The appellant testified that he demanded either the rest of his money or the return of the pistol. Mr. Ewing then walked to his car and retrieved the derringer, handing it to the appellant in a cotton zipper pouch.

Mr. Ewing denied that he had purchased the .38 from the appellant. He stated that he was an acquaintance of the appellant and that the appellant approached him in the restaurant parking lot and asked to borrow money. When Mr. Ewing sarcastically replied that he didn't have any money because he worked at Kentucky Fried Chicken, the appellant became angry and pulled out the pistol. Mr. Ewing testified that the appellant pointed the gun in his face and threatened to shoot him. The appellant then placed the pistol in a sock-like pouch and left, promising to return later. Mr. Ewing found a police officer who had been parked near the restaurant and told him what had happened.

Officer Marty Hill spotted the appellant walking down the street near the Oak Ridge Mall. He noted that the appellant was carrying something in his hand, but he could not determine what it was. Officer Hill called the appellant by name and asked him to come over to the patrol car. The appellant began walking toward the police car, but detoured behind a tree before he reached Officer Hill. When the appellant came out from behind the tree, he was no longer carrying the object that Officer Hill had observed in his hand.

As the appellant was walking toward Officer Hill's patrol car, Officers Smart and Wehenkel arrived. They saw the appellant walk behind the tree, and Officer Wehenkel heard the appellant say "I don't got no gun. I don't got no gun." Officers Smart and Wehenkel spoke to the appellant while Officer Hill searched behind the tree. In a fork of the tree, Officer Hill found the pistol in a cotton zipper bag. Officer Hill then shouted at the appellant, ordering him to put his hands on the patrol car. The appellant broke and ran in the direction of the mall and the officers gave chase. They followed him into the mall, but lost him when he entered Proffits department store.

Lieutenant John Davidson saw the appellant in the Proffits store. The appellant had removed his shirt and was "huffing and puffing." Lieutenant Davidson yelled the appellant's name and ordered him to stop, but the appellant ran out of the store. After running about twenty yards, the appellant stopped and was taken into custody.

The appellant was indicted and charged with attempted aggravated robbery, aggravated assault, evading arrest, and unlawful possession of a handgun. The jury returned a verdict of not guilty with respect to the attempted aggravated robbery and aggravated assault charges, but convicted the appellant on the remaining charges.

## SUFFICIENCY OF THE CONVICTING EVIDENCE

■ Where an appellant challenges the sufficiency of the convicting evidence, the

relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978). On appeal, we refuse to invade the province of the jury by reweighing the evidence or by substituting our own judgement as to the credibility of witnesses' testimony.

■ The appellant first alleges that the evidence is insufficient to support his conviction for unlawful possession of a handgun. Specifically, he asserts that because he repossessed the handgun from Mr. Ewing, he possessed it as a "chattel" or "merchandise" and not as a "handgun" as proscribed by Tennessee Code Annotated Section 39–17–1307(b)(1) (1991). Whatever this argument purports to mean, it completely ignores the plain language and clear intent of the statute. A conviction requires only that the defendant possessed a handgun having previously been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon. T.C.A. § 39–17–1307(b)(1)(A) (1991). The appellant was previously convicted of aggravated assault and malicious shooting. This issue is without merit.

The appellant also maintains that his conviction is invalid because the judgment indicates that he was convicted of "Possession of Weapon by Convicted Felon" rather than possession of a handgun as required by the statute. This issue is also without merit. The judgment forms merely reflect the language of the statute: "Unlawful carrying or possession of a weapon." T.C.A. § 39–17–1307 (1991).

■ The appellant asserts that the evidence is insufficient to support his conviction for evading arrest. Tennessee Code Annotated Section 39–16–603 (1991) provides: "It is unlawful for any person to intentionally

flee from anyone the person knows to be a law enforcement officer and the person: Knows the officer is attempting to arrest the person." *Id.* Officer Hill testified that after finding the gun, he approached the appellant and repeatedly told him to put his hands on the hood of the patrol car. Because Officer Hill indicated that at that point he intended to pat the appellant down for other weapons, the appellant contends that the proof is clear that Officer Hill was not trying to arrest him. On the contrary, Officer Smart testified that during this exchange, Officer Hill told the appellant that he was under arrest.

The most compelling evidence of the appellant's state of mind comes from his own testimony. When asked if he knew that he was being arrested, the appellant stated, "Well, normally if they tell you to put your hands on the hood, you're going to be arrested." He also testified, "And at that time, I didn't feel like going to jail right then, so I just ran." The appellant indicated that Officer Hill never told him that he was being arrested because, "He didn't have time." This issue is without merit.

The appellant further alleges that his apprehension by Officer Davidson was a separate incident and that, because he ran out of breath and came to a stop, the evidence that he was fleeing arrest was insufficient to support his conviction. In a related issue, the appellant argues that because a conviction requires a unanimous jury verdict, the trial court should have required the state to elect which episode the jury was to consider in reaching its verdict. The record simply does not support this conclusion. We find, as did the trial court, that there was one continuous pursuit which ended when the appellant was too exhausted to continue. The appellant was seen entering the Proffits department store. That another officer joined the chase at that point and ultimately arrested the appellant is of no consequence.

Finally, the appellant contends that there was a variance between the indictment charging him with evading arrest and the proof at trial. This is a restatement of the appellant's argument that Officer Hill was

not attempting to arrest him. This issue is without merit.

## THE TRIAL COURT'S INSTRUCTION TO THE JURY WITH REGARD TO THE REQUISITE *MENS REA* FOR THE CRIME OF EVADING ARREST

The appellant maintains that the trial court's instruction on the crime of evading arrest was unclear and misleading in that it inaccurately described the required mental element. Specifically, the appellant argues that the instruction as given would allow the jury to convict the appellant without finding that the appellant knew that the officer was attempting to arrest him. The trial court quoted the statutory language verbatim and then explained:

> In order to find the defendant guilty of this offense, the state must prove (1) that the defendant acted intentionally and knowingly, and (2) that the defendant did flee from a law enforcement officer, and (3) the defendant knew at the time of fleeing that the individual was fleeing from a law enforcement officer, and (4) that the officer was attempting to arrest the person or the person had been arrested.

While the trial court could have explained the statutory language more clearly, the statute, which was read to the jury, plainly states that if the defendant has not in fact been arrested, the defendant must know that the officer is attempting to arrest him. The appellant did not object to the instruction at trial, nor did he raise this issue in his motion for a new trial. Objections to the jury charge may not be raised for the first time on appeal except where particular instructions are required by statute or where the trial court wholly fails to charge on fundamental matters. *Pulley v. State*, 506 S.W.2d 164 (Tenn.Crim.App.1973). Accordingly, we find that this issue was waived.

## SENTENCING

The appellant was convicted of unlawful possession of a handgun, a Class E felony where the defendant has prior felony convictions involving violence, T.C.A. § 39–17–1307(b)(2) (1991), and evading arrest, a Class A misdemeanor. T.C.A. § 39–16–603(c) (1991). The trial court sentenced the appellant to two (2) years, the maximum sentence for a standard Range I offender for a Class E felony, T.C.A. § 40–35–112(a)(5) (1990), and eleven (11) months, twenty-nine (29) days, the maximum sentence for a Class A misdemeanor. T.C.A. § 40–35–111(e)(1) (1990). The appellant's sentences were set to run consecutively.

The appellant first contends that the trial court failed to consider applicable mitigating factors and therefore improperly sentenced him to the maximum sentence for the Class E felony. During the sentencing phase of his trial, the appellant asserted that two mitigating factors applied, namely that his criminal conduct neither caused nor threatened bodily injury, *see* T.C.A. § 40–35–113(1) (1990), and that a mental or physical condition, i.e., drug addiction, reduced his culpability. *See* T.C.A. § 40–35–113(8) (1990).

When a defendant challenges the length, range, or manner of service of his sentence, we conduct a *de novo* review on the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40–35–401(d) (1990). Where the trial court fails to follow the statutory guidelines, however, the presumption of correctness no longer applies and our review is completely *de novo*. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn.Crim.App.1992). In conducting our review we consider: (1) the evidence received at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments concerning sentencing alternatives; (4) the characteristics and nature of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and statutory enhancement factors; (6) any statement the defendant wishes to make in his or her own behalf about sentencing; and (7) the defendant's potential for rehabilitation. T.C.A. § 40–35–210(b) (1990); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn.1991).

The presumptive sentence shall be the minimum sentence in the range if no enhancement or mitigating factors exist. T.C.A. § 40–35–210(c) (1990). If enhancement factors exist but there are no mitigating factors, then the trial court may set the

sentence above the minimum in that range but still within the range. Should both enhancement and mitigating factors exist, the court must start at the minimum sentence in the range and enhance the sentence within the range as appropriate for the enhancement factors. The trial judge shall then reduce the sentence within the range as appropriate for the mitigating factors. T.C.A. § 40–35–210(d), (e) (1990).

Because the trial court explicitly stated that he considered the appellant's criminal history as an enhancement factor which would justify imposition of the maximum sentence, we strongly believe that the trial court followed the statutory principles of sentencing and weighed the appellant's criminal history against the proposed mitigating factors. However, because the record does not reflect whether the trial court found that these mitigating factors were inapplicable or simply outweighed by the appellant's lengthy criminal record, we will, from an abundance of caution, conduct a *de novo* review.

We find that Tennessee Code Annotated Section 40–35–113(8), the mitigating factor concerning the appellant's mental or physical condition, does not apply. The appellant asserts that his drug addiction is a physical or mental condition as contemplated by the statute which reduces his culpability, but the statute specifically provides that voluntary use of intoxicants is not included in this mitigating factor. T.C.A. § 40–35–113(8) (1990).

As to the second factor, that the appellant's criminal conduct neither caused nor threatened serious bodily injury; we find that this factor properly applies to the appellant. Any mitigating effect, however, is completely outweighed by the appellant's previous history of criminal convictions. The appellant has seventeen prior convictions dating back to age eighteen (18). These convictions include a conviction for malicious shooting, two (2) aggravated assaults, two (2) simple assaults, a weapons offense, and a drug offense. We find that, because of the appellant's extensive criminal history, the trial court properly sentenced him to the maximum sentence for both offenses.

The appellant also maintains that the trial court erred by ordering that his sentences be served consecutively. Tennessee Code Annotated Section 40–35–115 (1990) is our statutory authority regarding multiple convictions to determine whether sentences should run consecutively or concurrently. This statute is essentially a codification of *Gray v. State,* 538 S.W.2d 391 (Tenn.1976), and *State v. Taylor,* 739 S.W.2d 227 (Tenn. 1987). The court may order sentences to run consecutively if it finds by a preponderance of the evidence that one or more of the statutory criteria exists. In the instant case the trial court noted the appellant's prior violent offenses and opined that the appellant presents a danger to society. We find that consecutive sentencing is warranted by the appellant's extensive record of criminal activity. *See* T.C.A. § 40–35–115(b)(2) (1990).

Finally, the appellant asserts that the trial court erred by not granting him probation. Among the factors applicable to a defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, present conditions, the deterrent effect upon other criminal activities, and the best interest of the defendant and the public. *State v. Grear,* 568 S.W.2d 285 (Tenn.1978). Denial of probation may be based on one applicable factor alone. *Powers v. State,* 577 S.W.2d 684, 685–86 (Tenn.Crim.App.1978). The appellant has a lengthy criminal record and no recent history of employment or current job prospects. We also find that the best interests of the public and of the appellant would be better served by incarceration. This issue is without merit.

## CONCLUSION

We find the issues presented by the appellant to be without merit. The judgment of the trial court is therefore:

**AFFIRMED.**

HAYES and BARKER, JJ., concur.