IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. BILLY HANCOCK

**Appeal as of Right from the Criminal Court for Shelby County**
**No. 98-12271, 98-12272, 98-12273, 98-12275, 98-12276      Chris Craft, Judge**

―――――――――

**No. W1999-01746-CCA-R3-CD - Decided September 21, 2000**

―――――――――

The defendant, Billy Hancock, pled guilty in Shelby County Criminal Court to vehicular homicide, vehicular assault, aggravated child endangerment, three (3) counts of child endangerment, and reckless driving. The trial court sentenced the defendant to serve twelve (12) years for vehicular homicide, four (4) years for vehicular assault, four (4) years for aggravated child endangerment, nine (9) months for each of the three (3) counts of child endangerment, and six (6) months for reckless driving. The court ordered that the sentences for vehicular homicide, vehicular assault, and each of the three counts of child endangerment were to be served consecutively to each other, and that the sentences for reckless driving and aggravated child endangerment were to be served concurrently with the sentence for vehicular homicide. The total effective sentence was eighteen (18) years and three (3) months. On appeal, this court affirms the imposition of consecutive sentences because the trial court properly found that the defendant was a dangerous offender and had an extensive criminal history.


**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court of Shelby is Affirmed**

SMITH, J., delivered the opinion of the court, in which WITT, J., and WEDEMEYER, J., joined.

Charles R. Curbo, Memphis, Tennessee, attorney for the appellant, Billy Hancock.

Paul G. Summers, Attorney General and Reporter and Tara B. Hinkle, Assistant Attorney General, attorneys for the appellee, State of Tennessee

### OPINION


#### Factual Background

On October 18, 1997, the defendant was taking two of his children and three other children for a ride in a pick-up truck. All five children were inside the cab with the defendant. Inexplicably, the defendant began driving very fast, and failed to slow down as he approached a traffic light. Although the traffic light was red, the defendant attempted to speed through the intersection. As he

did so, he struck a van that was crossing the intersection in front of him. Octavious Williams, one of the children in the defendant's truck, died as a result of the accident, and everyone else involved was injured.

A Shelby County Grand Jury indicted the defendant for two (2) counts of vehicular homicide, one (1) count of vehicular assault, (1) one count of aggravated child endangerment, three (3) counts of child endangerment, one (1) count of driving while under the influence of drugs, and one (1) count of reckless driving. Without a plea agreement, the defendant pled guilty to one (1) count of vehicular homicide, one (1) count of vehicular assault, one (1) count of aggravated child endangerment, three (3) counts of child endangerment, and one (1) count of reckless driving.

At a sentencing hearing, the state called Tameka Richardson to testify. Ms. Richardson was the mother of three of the children, including Octavious Williams, who were riding with the defendant when he wrecked. The defendant was the father of the other two children, but was not Octavious's father. Ms. Richardson left her three children with her mother on October 18, 1997. The next time she saw them was after the wreck when she was summoned to the hospital to identify Octavious's body. Her other two children, Tervellious Richardson and Billy Richardson, were also injured. While Tervellious only had scratches and bruises as a result of the accident, Billy suffered a broken leg and required fifty-six (56) stitches for cuts to his head. Additionally, both children had to undergo counseling as a result of the trauma. Ms. Richardson testified that the defendant had expressed remorse for the accident.

Tiffany Ballard, Ms. Richardson's sister, was the mother of the other two children riding in the defendant's truck at the time of the collision. She also left her children with her mother on October 18, 1997. Like her sister, the next time Ms. Ballard saw her children was after the accident at the hospital. Although neither of Ms. Ballard's children received major injuries, both were cut in the accident, and one had to undergo counseling.

Sue Haaga was in the van struck by the defendant's car. Ms. Haaga testified that she was driving the van, and that her fifteen (15) year old daughter, Lindsey, was a passenger. Ms. Haaga went through a green light and prepared to turn left at an intersection when she felt the defendant's truck strike her van. She never saw the truck. The impact felt like an "explosion." Ms. Haaga suffered emotional trauma, contusions, a herniated disk, and severe pain in her leg as a result of the accident. Ms. Haaga's daughter, Lindsey, suffered a closed head injury and scarring from the accident.

Officer Thomas Tilton was standing outside of a car wash near the intersection in question when he noticed the defendant's truck driving through heavy traffic toward the intersection. Officer Tilton estimated that the defendant's truck was traveling between eighty (80) and (100) one-hundred miles per hour as it approached the intersection. As the defendant crossed the intersection, he struck Ms. Haaga's van, which was crossing the intersection in front of him. The van spun around on two wheels and came to a rest. The defendant's pick-up truck flipped on its side, slid down the street and hit a curb. When it hit the curb, the truck went airborne and struck a telephone pole, cutting the pole in half. The defendant was thrown from the vehicle. The truck then spun around and came to a rest.

Officer Tilton went to help the victims. When he got there, he saw children in the truck, so he began pulling them out of the wreckage. One of the children, Octavious Williams, before passing out, asked Officer Tilton for help. Officer Tilton began performing CPR on the child, but was forced

to stop in order to restrain the defendant who was shouting at the officer that he had been doing drugs, that he did not care about the children, and that the officer could not arrest him. Milton Burchfield, a bystander, took Officer Tilton's place performing CPR on Octavious until paramedics arrived. Officer Tilton handcuffed the defendant and then continued pulling children out of the truck. Four of the children were injured and Octavious Williams died as a result of the crash.

Milton Burchfield was standing near the intersection when the collosion occurred. He heard the truck collide with the van, and he ran to help the victims. Mr. Burchfield helped Officer Tilton pull the children out of the truck, and he helped perform CPR on Octavious Williams when Officer Tilton had to restrain the defendant. Mr. Burchfield heard the defendant say he did not care about the children.

Freddie Harris, the defendant's step-father, testified that the defendant was a caring father. Mr. Harris stated that although he knew the defendant had some previous arrests, he had never seen the defendant intoxicated.

Valeria Pickett, the defendant's sister, stated that, although the defendant "went wrong" after his father died, the defendant was a "fine person." She stated that the defendant was a good father, and that he was taking his children shopping on the day of the wreck. After the defendant's father's death, however, the defendant began using cocaine. Ms. Pickett never saw the defendant use cocaine around his children, but she had seen the defendant high on cocaine a few days before the car wreck When she saw him, he had "flipped out" as a result of snorting cocaine. Ms. Pickett was worried about her brother, so she took him to their mother's house to calm him down. The next time she saw him was at the scene of the wreck after the wreck occurred. She thought he looked "like he was on something." Finally, Ms. Pickett testified that the defendant expressed remorse for the collosion.

Shaundra Hill testified that she was the mother of three of the defendant's children, none of whom were involved in the accident. Ms. Hill testified that the defendant was a good father toward her children. She also testified that she was not aware that the defendant used drugs or alcohol. Ms. Hill thought that the defendant was remorseful about the accident, and that he had been rehabilitated since the wreck.

Testifying in his own behalf the defendant admitted to having a fairly lengthy criminal record as a juvenile, including a voluntary manslaughter charge. He also admitted being convicted of assault after he was an adult. He admitted using cocaine for a few months before the collosion. The last time he used cocaine, however, was a few days before the wreck. He testified that he was at a social gathering a few days prior to the wreck when a friend gave him some cocaine. The defendant used more than one gram at the party, but he did not know exactly how much he used. The defendant had a bad reaction to the drugs. The defendant's sister took him to his mother's house, and he felt better after drinking some warm milk. The next morning, October 18, 1997, the defendant borrowed his stepfather's truck and went to see his children at their grandmother's house. When he got there, the children's grandmother told the defendant that they had gotten good report cards, so the defendant decided to take the children shopping. He put all five children in the back of the truck, and took a friend to the liquor store. After the defendant dropped his friend off, he put the children in the front of the truck and continued driving. While he was driving the children, the defendant lit a cigarette. As he lit the cigarette, he began to feel like he did when he had the bad reaction to the cocaine. Then, as the defendant approached an intersection, he saw that the traffic light was yellow, so he sped up. The defendant estimated that he was driving about fifty (50) miles

per hour when he drove through the intersection. He saw Ms. Haaga's van at the last minute and could not avoid hitting her.

After the collision, the defendant woke up lying on the ground. He asked the police about his children, and the police told him that the children would be all right. Then, the defendant was put in an ambulance and taken away. He denied making the statements that Officer Tilton said he made. The defendant then apologized for the collosion.

On cross-examination, the defendant admitted that he was convicted for assault twice and driving without a license several times. He could not remember being convicted of reckless driving. The defendant admitted that he had been driving on a revoked license when he had this wreck.

Following a sentencing hearing, the trial court sentenced the defendant to serve twelve (12) years for vehicular homicide, four (4) years for vehicular assault, four (4) years for aggravated child endangerment, nine (9) months for each of the three (3) counts of child endangerment, and six (6) months for reckless driving. The court found that the defendant was a dangerous offender and that he had an extensive criminal history; thus the court ordered that the sentences for vehicular homicide, vehicular assault, and each of the three counts of child endangerment were to be served consecutively to each other, and that the sentences for reckless driving and aggravated child endangerment were to be served concurrently with the sentence for vehicular homicide. The total effective sentence was eighteen (18) years and three (3) months.

### Consecutive Sentencing

The defendant claims that the trial court erred when it sentenced the defendant to serve consecutive sentences. Specifically, the defendant claims that the trial court erroneously found that (1) the defendant had an extensive criminal history, and (2) that the defendant was a dangerous offender.

This court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. A trial court may order sentences to run consecutively if it finds that one or more of the statutory criteria exist by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). In this case, the trial court found that consecutive sentencing was warranted because (1) the defendant's record of criminal activity was extensive, and (2) the defendant was a dangerous offender whose behavior indicated little or no regard for human life, and had no hesitation about committing a crime in which the risk to human life was high. See Tenn. Code Ann. §§ 40-35-115 (b)(2), -115(b)(4).

The trial court was correct in determining that the defendant had an extensive criminal record. Tenn. Code Ann. § 40-35-115(b)(2) states: "[t]he court may order sentences to run consecutively if the court finds by a preponderance of the evidence that ... [t]he defendant is an offender whose record of criminal activity is extensive." In this case, the presentence report reveals that the defendant had an extensive juvenile record, including possession of drugs and voluntary

manslaughter convictions. Additionally, as an adult the defendant was convicted of simple assault twice, reckless driving twice and driving on a revoked license twice. Furthermore, the appellant testified that he used cocaine prior to committing the instant offenses. We agree with the trial court that the defendant's record is "extensive" within the meaning of the statute.

The trial court was also correct in determining that the defendant was a dangerous offender. Tenn. Code Ann. § 40-35-115(b)(4) allows the trial court to impose consecutive sentencing if "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]" Here, the circumstances of the offense clearly satisfy the statutory language. Despite numerous driving offenses, the defendant, an unlicensed driver, put five children in the truck and sped down a busy street. He ignored a red light and crashed into another vehicle, killing a child and injuring everyone else involved. Furthermore, as a police officer tried to save a child's life, the defendant merely stood by, screamed that he did not care about the children, and that the police could not arrest him. The defendant's behavior evidenced little regard for human life, and the trial court could have found that the defendant had no hesitation about committing a crime in which the risk to human life was high.

However, before ordering consecutive sentences based on a finding that the defendant is a dangerous offender, the sentencing court is also required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999); State v.. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). In this case, the court found that, given the circumstances of the offense, "to give [the defendant] anything less than [the sentence imposed] would be a travesty." The court also found that, based on the defendant's record, confinement was necessary to protect the public, because "[the defendant] has absolutely no intent to obey the laws at all." We agree. It is apparent that this is a particularly egregious vehicular homicide caused by the defendant's incredibly irresponsible actions. Moreover, it appears that despite numerous encounters with the criminal justice system the defendant has continued to engage in behavior that puts innocent people at great risk. Clearly, consecutive sentences are necessary to protect the public from the defendant's conduct.

We find that the trial court did not err in ordering consecutive sentences. This issue is without merit.

Accordingly, the judgment of the trial court is AFFIRMED.