# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 23, 2002 Session

## STATE OF TENNESSEE v. CINDY L. HOLDER a/k/a CINDY LYNN PLEMMONS

**Direct Appeal from the Circuit Court for Blount County**
**No. C-12061, 12062, C-12084, 12085, 12087      D. Kelly Thomas, Jr., Judge**

---

**No. E2000-01191-CCA-R3-CD**
**February 21, 2003**

---

The defendant entered guilty pleas to aggravated assault, A misdemeanor theft of services, E felony vandalism, and two counts of aggravated burglary.[1] For these offenses the defendant received an agreed upon effective sentence of six years with the manner of service to be determined at a subsequent sentencing hearing. At the conclusion of this hearing, the trial court denied the defendant alternative sentencing. Through the instant appeal the defendant contests this denial. However, after reviewing the record and relevant authorities, we find that the defendant waived this issue and that, even if not waived, the claim lacks merit. We, therefore, affirm the trial court's action

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and THOMAS T. WOODALL, J., joined.

Lance A. Evans and K. Gregory Williams, Maryville, Tennessee, for the appellant, Cindy L. Holder, a/k/a Cindy Lynn Plemmons.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; Mike Flynn, District Attorney General; and Tammy Harrington, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] In announcing its sentence, the trial court also referenced a D felony theft and an A misdemeanor theft. These were the offenses underlying the aggravated burglary charges, and judgments reflecting respective sentences of two years and of eleven months and twenty-nine days are included in Volume II of the technical record. The plea agreement form for this set of four offenses lists the thefts among the relevant charges but does not mention any acquiescence on the defendant's part to plead guilty to the theft offenses. Furthermore, though the State's brief includes these two convictions in its "Statement of the Case," the defendant's does not. As the record before this Court includes no transcript of the plea hearing, we lack additional information to clarify this matter before providing the history of this case. However, as these sentences do not change the effective sentence received by the defendant or impact the manner of service, we are nonetheless able to address the single issue presented.

## OPINION

## Factual Background

The offenses involved in this appeal arise out of three separate incidents. On August 27, 1999, the defendant, after arriving at her destination, displayed a weapon to avoid paying a cab driver for his services. Though she denies pulling a weapon on this individual, she pled guilty as charged to aggravated assault with a deadly weapon. On September 14, 1999, while on bond for these offenses, the defendant burglarized both Paul Myers' residence and Denise Tuttle's residence, allegedly taking property valued at over one thousand dollars from one and under five hundred dollars from the other. Thereafter, during her incarceration pending the resolution of these charges, the defendant threw a tray, hitting and damaging a sprinkler head in the jail. The water released flooded the dayroom and three cells, resulting in over five hundred dollars' worth of damage.

At the sentencing hearing the defendant provided further details regarding the offenses beginning with the aggravated assault. She stated that she had been drinking and doing cocaine for some time prior to entering the cab. As a result, she claimed only to remember getting into the vehicle and getting out with her bag, but she averred that she had "never owned a gun in her life." On cross examination she acknowledged a statement in her handwriting in which she admitted to flashing a toy water gun at the victim; however, she then asserted that she had not exhibited any type of gun to the driver and that she could not even recall giving the statement.

Concerning the aggravated burglary of Myers' apartment, the defendant indicated that she was acquainted with the victim and that she "had been up for a couple of days." According to her account she had pawned her television to a third party in order to buy drugs. The third party later sold the set to Myers, who would not agree to allow the defendant to purchase the set back from him. Thus, the defendant explained that she had gone to his apartment and taken it. Again, the defendant contended that she was high at the time and that she had sought to regain the set in order to pawn it for money to buy more drugs. The defendant further claimed that she had not been the only person involved in this burglary and the one at Tuttle's home but had taken the fall for others, whom she named in court.

Turning more specifically to the burglary of Tuttle's residence, the defendant made no claim that she was seeking to recover any property which had once belonged to her. When asked by the trial court why she had gone to Tuttle's apartment, the defendant first responded, "[b]ecause I was high on cocaine." When the court clarified the question by asking what she had intended to do there, the defendant said, "Really, I can't – I don't know." Then, when the trial court pointedly asked if she had gone there to steal, the defendant admitted that such was the reason.

Finally, in reference to the vandalism offense, the defendant stated that she had thrown a tray while upset over her incarceration and had accidentally struck a sprinkler head. Though she acknowledged denting the sprinkler and setting it off, the defendant said that she did not "see how it caused any damage." She further affirmed that she was "still coming off drugs" at the time.

Beyond this information the defendant offered other details related to her childhood and more recent life. For example, the defendant testified that her mother is a recovering drug addict and that her father is an alcoholic. The defendant added that she had spent a number of years in foster care because of her mother's addiction but claimed to have been unaware of her mother's drug usage until

around the age of fifteen. The defendant stated that after completing the ninth grade, she had been kicked out of high school for fighting. Though sent to an alternative school thereafter, the defendant related that she had only a ninth grade education. She had then married at sixteen years of age with parental consent. According to the defendant she had also begun actively using drugs and drinking alcohol between the ages of twelve and thirteen through friends of her siblings. She added that at other times friends at parties, boyfriends, etc., would give her drugs and that for five months during 1997 and 1998 she had obtained money for drugs herself by "[t]hieving, stealing from stores and stuff." Though she had failed a drug test during the period of time that these charges had been pending, she maintained that she had not used narcotics for almost a year. She also stated that she had attended AA and taken GED classes while in jail and planned to continue in both programs. Furthermore, she related that she intended to divorce her husband and had a place to live, transportation, and employment through her current boyfriend, Steve McCarter.

McCarter was the only other individual called to testify at the sentencing hearing. He verified that the defendant would have a job and a place to stay with him. Nevertheless, he also acknowledged that she had only worked for him a short time prior to her present incarceration and that he had initiated charges, later dismissed, against the defendant regarding the theft of his automobile. In addition, McCarter provided a varying account of the events surrounding an old criminal trespassing conviction of his and admitted that he had fairly recently been charged with a domestic violence offense involving an ex-girlfriend.

The prosecution called no witnesses. However, it did make part of the record the presentence report and the aforementioned statement written by the defendant.

After hearing argument by the defense and the prosecution, the trial court announced its findings and denied her alternative sentencing. In support of this decision, the trial court found confinement necessary to protect society because of the defendant's history of criminal conduct. The court also noted that the defendant had committed one group of offenses while she was on bond for the other and had committed yet another offense while incarcerated. Though acknowledging the "terrible" aspects of the defendant's childhood, the court noted that the defendant's brother, who had been represented as a hard-working, stable individual, had grown up in the same situation. The court further remarked that "there comes a point in time where you've got to make decisions to do something different" and indicated that the defendant did not appear to be amenable to rehabilitation at this point in her life. As an illustration of this point, the trial court added,

> You were arrested for aggravated assault and theft of services. You kept doing the wrong thing after that, by being – by committing two burglaries. You were put in jail for the burglaries. You kept doing the wrong thing by committing the vandalism. You finally bonded out and you kept doing the wrong thing by using drugs, as evidenced by this positive drug screen in the spring – or in May of 2000. Then you pled guilty and still kept doing the wrong thing and ran off and didn't even come back for the sentencing.
> And I'm sorry to come to this conclusion – and there aren't many 20-year-olds who come in here that I sentence to the Department of Corrections. But the only time that you stop making these bad decisions and doing these wrong things is when you got put in jail and didn't get out.

**<u>Denial of Alternative Sentencing</u>**

Through her sole issue the defendant avers that the trial court erred in denying her some form of alternative sentencing. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider a defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, the sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the individual defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); <u>Ashby</u>, 823 S.W.2d at 169. We are also to recognize that the defendant bears the burden of demonstrating that the sentence is improper. <u>Ashby</u>, 823 S.W.2d at 169.

Moreover, Tennessee Code Annotated section 40-35-103 subsection (1) provides that sentences involving confinement are to be

> based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1); <u>see</u> <u>State v. Batey</u>, 35 S.W.3d 585, 588 (Tenn. Crim. App. 2000) (quoting same). Additionally, a trial court may consider the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114, "as they are relevant to the [section] 40-35-103(1) considerations." <u>Batey</u>, 35 S.W.3d at 588; <u>see</u> <u>State v. Zeolia</u>, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The trial court should also consider the defendant's potential for rehabilitation when deciding whether an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); <u>Zeolia</u>, 928 S.W.2d at 461. This Court has further indicated that "a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of both the defendant and the public" in determining whether to grant or deny probation. <u>State v. Ring</u>, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001); <u>see</u> <u>State v. Black</u>, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Finally, Tennessee Code Annotated section 40-35-102(6) states that under certain circumstances a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing." Tenn. Code Ann. § 40-35-102(6).

As we begin our analysis, we note that though factual details of the offenses were outlined somewhat in the sentencing hearing transcript presented to us, the record does not include a

transcript of the hearing or hearings at which the defendant entered her pleas of guilt. On numerous occasions we have "held that failure to include the transcript of the guilty plea hearings in the record prohibits this court from conducting a meaningful de novo review." State v. Kevin W. Burns, No. M1998-00449-CCA-R3-CD, 1999 Tenn. Crim. App. LEXIS 1246, at *2 (Tenn. Crim. App. at Nashville, Dec. 15, 1999); see also, e.g., State v. Jackie R. Ellis, No. 01C01-9804-CC-00177, 1999 Tenn. Crim. App. LEXIS 347, at * 2 (Tenn. Crim. App. at Nashville, Apr. 16, 1999). Furthermore, Tennessee Rule of Appellate Procedure 24(b) also clearly provides that the party bringing the appeal bears the burden of providing a complete record for review of the issues presented. Tenn. R. App. P. 24(b). Because the transcript of the guilty plea hearing including the prosecution's statement of the supporting facts was not included in the record before us, we find that the defendant has waived this concern. See Kevin W. Burns, 1999 Tenn. Crim. App. LEXIS 1246, at *2-*3.

Nevertheless, even if the issue were not waived, we find sufficient evidence in the record to uphold the trial court's denial. Among the above-provided findings, we note that the trial court considered the defendant a poor risk for rehabilitation at this time. The record reflects that while on bond for the first set of offenses committed in August of 1999, the defendant acquired a second set of charges. The defendant also committed vandalism while incarcerated. Furthermore, in May of 2000, prior to entering her June pleas, the defendant tested positive for cocaine, marijuana, and benzodiazepines. Though she claims to have stopped taking drugs at some point before her most recent re-incarceration, she did not voluntarily return to face sentencing but rather was arrested on new charges (which arose out of the alleged theft of Steven McCarter's vehicle and were later dismissed).

Additionally, "[t]his Court has previously held that a defendant's lack of candor, credibility, and willingness to accept responsibility for [her] crime are further relevant considerations in determining a defendant's potential for rehabilitation." State v. Matthew DeLoss Larsen, No. M2000-01675-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 829, at *42 (Tenn. Crim. App. at Nashville, Oct. 12, 2001); see also, e.g., Zeolia, 928 S.W.2d at 463; State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). In the case presently before this Court, the defendant appears to attempt to shift the blame for her actions onto the people with whom she was associating. For example, she stated early in her testimony, "You know, I just started hanging out with the wrong crowd. That's the reason that I did all the things that I did. I wish I could take it all back, but the peers I was around . . . ." She returned to this theme when speaking of her expulsion from high school. She explained that she had been sent to Seymour Alternative Learning Center "[b]ecause I was, you know, running with the wrong crowd in high school at Sevier County." Additionally, she tied all of the offenses to her being drunk, high, and/or coming off drugs, thereby possibly attempting to relieve herself of some culpability once more. See Matthew DeLoss Larsen, 2001 Tenn. Crim. App. LEXIS 829, at *43. Additional review of the record leads to other examples reflecting a lack of credibility or candor by the defendant as with her responses to the trial court's questions regarding one of the aggravated burglaries. In an above-outlined exchange the defendant claimed that she did not know what she had intended to do at Tuttle's apartment until the trial court specifically asked if her intent had been to steal. The defendant also told the trial court that she had been expelled from high school in the ninth grade for fighting, but she apparently told the individual compiling the presentence report that she had been expelled from Sevier County High School in the tenth grade for missing too many days.

While we sincerely hope that the defendant successfully completes her GED and continues with effective drug and alcohol treatment, we note that the overall history available to the trial court at the time of sentencing did not reflect well on her ability to follow through with commitments. Beyond her failure to complete high school, her charges committed while on bond, her failure to appear for sentencing, her positive drug test, and her apparent occasional lack of candor, the record indicates no verifiable work history exceeding one month's duration.

Though additional considerations arguably also support the denial of alternative sentencing, we find that, under the facts presented, the defendant's apparent lack of rehabilitative potential alone overcomes the presumption of suitability for such a sentence in this case. The defendant has failed to demonstrate the impropriety of her sentence; thus, this issue lacks merit.

### Conclusion

For the foregoing reasons, we find that the defendant waived the claim raised and that, even if not waived, the issue does not merit relief. Accordingly, the judgment of the trial court is affirmed.

_____

JERRY L. SMITH, JUDGE