# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 18, 2012 at Knoxville

## STATE OF TENNESSEE v. DONALD VAUGHN

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2285      Mark J. Fishburn, Judge**

---

**No. M2011-00937-CCA-R3-CD - Filed April 11, 2013**

---

The Defendant, Donald Vaughn, pled guilty to two counts of aggravated rape, a Class A felony. See Tenn. Code Ann. § 39-13-502. Following a sentencing hearing, the trial court sentenced the Defendant to an effective sentence of forty-eight years, to be served at 100%. In this appeal as of right, the Defendant contends (1) that the trial court erred by denying his motion to withdraw his guilty pleas; (2) that his guilty pleas were not valid because the State failed to prove an essential element of the offense; and (3) that the trial court erred by imposing consecutive sentences. Following our review, we conclude that these issues are without merit and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Mark Anthony Kovach, Nashville, Tennessee (at plea submission hearing); and Robert J. Turner, Nashville, Tennessee (at sentencing hearing and on appeal), for the appellant, Donald Vaughn.

Robert E. Cooper, Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Janice Norman and Robert Elliott McGuire, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

In July 2009, an indictment was issued charging the Defendant with one count of aggravated kidnapping and two counts of aggravated rape. See Tenn. Code Ann. §§ 39-13-

304, -502. After jury selection for the Defendant's trial had started, the Defendant entered into a plea agreement with the State. On December 6, 2010, the Defendant pled guilty to two counts of aggravated rape with his sentence to be determined by the trial court in exchange for dismissal of the aggravated kidnapping charge.

At the plea submission hearing, the trial court explained to the Defendant the charges he faced, the possible sentencing consequences of his charges, and his constitutional rights. The Defendant stated that he understood what he was pleading guilty to, as well as the possible sentencing consequences of his pleas, and that he was waiving his constitutional rights. The Defendant further stated that he was not under the influence of any intoxicant and was not afflicted by any mental illness. The Defendant stated that no one had forced him to enter his guilty pleas and that he had reviewed his plea agreement with his attorney prior to signing it. The trial court noted that the Defendant had previously complained about his attorney, but the Defendant stated that he had no "additional" complaints about his attorney and that his attorney had answered his questions about the plea agreement.

The State presented the following facts in order to establish a factual basis for the Defendant's guilty pleas. On October 31, 2008, the victim was on her way to a Halloween party when she noticed the Defendant following her in a white Jeep. The victim repeatedly tried to get away from the Defendant, and only left her car after she believed he was no longer following her. After exiting her car, the victim saw the Defendant standing across the street from her. The victim demanded to know why the Defendant was following her. The Defendant rushed the victim, grabbed her, and drug her across the road and into some bushes.

According to the State, the Defendant then placed his hand over the victim's mouth and told her to "shut the f--k up" or he would kill her. As the victim struggled and attempted to scream, the Defendant licked and kissed her neck and breasts. The Defendant pried the victim's thighs open, ripped her underwear off, and digitally penetrated her vagina. After digitally penetrating the victim, the Defendant unbuckled his pants and penetrated the victim's vagina with his penis. After several minutes, the Defendant fled, and the victim was able to flag down a motorist and call 911.

The State further presented that during the rape, the victim suffered "a busted lip," a bruise on her arm, and scratches on her right hip and inner thighs. The Defendant's DNA was found on the victim's neck and breasts, as well as on a semen stain on the victim's dress. Semen recovered from the victim's vagina was also found to be a partial match to the Defendant's DNA. The Defendant agreed that these facts were "generally true and correct" and pled guilty to two counts of aggravated rape.

After the Defendant entered his guilty pleas, he fired his appointed counsel and retained a different attorney to represent him. The Defendant then filed a motion to withdraw his guilty pleas. The trial court held a hearing on the motion, at which the Defendant testified that his original counsel failed to met with him and failed to properly prepare to try his case. The Defendant testified that he repeatedly wrote letters to the trial court and the Board of Professional Responsibility complaining about his attorney's lack of representation. The Defendant claimed that as a result of his actions, his original counsel repeatedly belittled, ridiculed, mocked, and cursed him, and warned him that "when you f--k with an attorney, you're going to get hung."

The Defendant claimed that he did not want to plead guilty but felt he had no choice but to do so after jury selection had started. According to the Defendant, his attorney failed to challenge any of the potential jurors and laughed at him while pointing out potential jurors who were going to "hang" him. The Defendant claimed that the day jury selection began in his trial, his original counsel yelled at him and berated him into accepting the plea agreement. The Defendant testified that he just became "a machine" and signed the plea agreement and answered "yes" to whatever he was asked in order to "get it over with." The Defendant claimed that he went into a "shock" that lasted the next four days and he could not remember what happened during that time.

The Defendant admitted on cross-examination that he had previously pled guilty to a felony and had gone through the plea submission process prior to his pleas in this case. The Defendant also admitted that immediately after he entered his pleas in this case, he called his brother and told him that he had decided to plead guilty because the Holy Spirit had moved him and God had told him to plead guilty. The Defendant also told his brother that he decided to plead guilty because there were too many women in the jury pool and he believed that there was some sort of conspiracy to place acquaintances of the victim and people familiar with his case on the jury.

The Defendant's mother testified that she overheard the Defendant's attorney berate him during jury selection. She also testified that the Defendant's attorney approached her and asked her to convince the Defendant to plead guilty. She claimed that after she refused to do so, the Defendant's attorney locked her in a conference room in the courthouse while the Defendant plead guilty. The trial court subsequently denied the Defendant's motion to withdraw his guilty pleas.

At the Defendant's sentencing hearing, the victim testified consistently with the State's previous description of the Defendant's attack on her. The victim testified that the attack left her in shock and that she was left with scratches on her neck, a "busted lip," scratches on the inside of her thighs, a bite mark on her arm, and bruising. The victim also

testified that, as a result of being raped by the Defendant, she suffered from nightmares, had been through months of therapy, and was constantly afraid and paranoid about being alone. The victim denied knowing the Defendant or that the Defendant was acquainted with any of her friends.

Britney Mak testified that on January 28, 2005, she was sixteen years old and walking home from school when the Defendant approached her in a white van. The Defendant got out of the van and asked her some questions about the neighborhood before asking her if she had ever had sex with an older man. The Defendant then asked Ms. Mak to "suck his d--k." At that point, Ms. Mak ran from the Defendant, and the Defendant chased her until she jumped over a creek. Ms. Mak then called the police and was able to identify the Defendant from a photographic line-up.

Detective Eric Fitzgerald of the Metropolitan Nashville Police Department (MNPD) testified that he investigated Ms. Mak's case. Det. Fitzgerald testified that the same day the Defendant approached Ms. Mak, he had grabbed a woman's buttocks at a pet store and had taken pictures of another woman at a gas station. The Defendant told Det. Fitzgerald that "bad things happen[ed]" when he drank and used cocaine and that January 28, 2005, "was one of those days that some bad things happened." Det. Fitzgerald testified that the Defendant was charged with sexual battery and attempted aggravated kidnapping as a result of his actions on January 28, 2005. The Defendant eventually pled guilty to one count of attempted aggravated kidnapping and received a sentence of three years probation. The Defendant was still on probation when he raped the victim.

The Defendant's aunt testified that she was ten years older than the Defendant and that she had been close with him. However, their relationship changed in 2007, when the Defendant came to her house and they became intoxicated. According to the Defendant's aunt, at one point the Defendant hugged her and told her that he had "always wanted to f--k" her. She rebuffed the Defendant, and he apologized. The Defendant's aunt eventually passed out, and when she woke up, she was wearing clothing she did not recognize. The Defendant's aunt testified that she had a very unsettling feeling about what had occurred while she was passed out, so she went to the Defendant's house to ask him about what had happened. After speaking with the Defendant, she was about to leave when the Defendant exposed his penis to her, grabbed her, and "begged" her to touch his penis. The Defendant's aunt testified that she had to struggle with the Defendant and fight him off in order to get away from him. She testified that she did not contact the police about this incident because the Defendant was on probation for the incident involving Ms. Mak.

It was also around this time that the Defendant's aunt realized that the Defendant had been responsible for numerous harassing phone calls made to her over a ten-year period.[1] The Defendant's aunt testified that the Defendant would call her late at night and would be masturbating when she answered the phone. After the incident in 2007, the Defendant began calling her more frequently in an attempt to intimidate her. The harassing phone calls did not stop until the Defendant was arrested in this case.

The Defendant's mother testified that there were numerous family members and friends present to support the Defendant at the sentencing hearing. She testified that the Defendant had completed his GED while incarcerated and had completed several other programs as well. The Defendant's mother also testified that the Defendant had three children who needed him and were taking his absence especially hard. She testified that she had never seen the Defendant drunk but recalled that the Defendant's ex-wife had stated that the Defendant was "the most wonderful person you'll ever meet until he starts drinking."

The trial court sentenced the Defendant as a Range I, standard offender to twenty-four years on each count to be served at 100%. In a lengthy and detailed ruling from the bench, the trial court ordered the Defendant's sentences to be served consecutively, for an effective sentence of forty-eight years. To support its decision, the trial court concluded that the offenses had been committed while the Defendant was on probation, that the Defendant was an offender whose record of criminal activity was extensive, and that the Defendant was a dangerous offender. Following the trial court's sentencing decision, the Defendant timely filed a notice of appeal, and this appeal followed.

ANALYSIS

*I. The Defendant's Guilty Pleas*

The Defendant contends that the trial court erred by denying his motion to withdraw his guilty pleas. The Defendant also contends that his guilty pleas were not valid because the State failed to prove that the Defendant inflicted a bodily injury to the victim. The Defendant argues that because the trial court stated during the sentencing hearing that the victim's physical injuries "fortunately were not significant," the victim did not suffer a bodily injury. The State responds that the trial court did not err in denying the Defendant's motion to withdraw his guilty pleas and that the Defendant's guilty pleas were valid.

---

[1]The State also presented the testimony of MNPD Officer Marsha Brown that phone records revealed that the harassing phone calls had been made from the Defendant's phone number.

In his brief, the Defendant has failed to make any argument to support his contention that the trial court erred by denying his motion to withdraw his guilty pleas. The Defendant has also failed to supply any citation to authorities to support this contention. As such, the Defendant has waived review of the issue in this court. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument[ or] citation to authorities . . . will be treated as waived in this court.").

With respect to the Defendant's contention that his guilty pleas were not valid, we note that aggravated rape is defined as the "unlawful sexual penetration of a victim by the defendant" during which the defendant "causes bodily injury to the victim." Tenn. Code Ann. § 39-13-502(a)(2). "Bodily injury" is defined as including "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). The trial court's statement that the victim's physical injuries "fortunately were not significant" does not negate the fact that the Defendant caused scratches on the victim's inner thighs and other areas of her body, a bruise on her arm, a "busted lip," and a bite on her arm. A bodily injury was clearly established by the factual basis for the Defendant's guilty pleas provided by the State and the victim's testimony at the sentencing hearing. As such, we conclude that this issue is without merit.

## II. Consecutive Sentences

The Defendant contends that the trial court erred by imposing consecutive sentences.[2] However, the Defendant's main contention in his brief is that he was improperly convicted of two counts of aggravated rape when both offenses arose from the same criminal episode. The State responds that the Defendant was on probation when he committed the offenses; therefore, the trial court properly imposed consecutive sentences.

The factual basis for the Defendant's guilty pleas established that he subjected the victim to both digital and penile penetration. Our supreme court has previously noted that "generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." State v. Phillips, 924 S.W.2d 662, 664 (Tenn. 1996) (quoting 75 C.J.S. Rape § 4 (1952 & Supp. 1995)). This is because each act of sexual penetration "is capable of producing its own attendant fear, humiliation, pain, and damage to the victim" and "requires a purposeful act on the part of the perpetrator." Id. at 665. As such, a defendant "may be convicted of more than one offense when the rape involves separate acts of sexual penetration." Id. (quoting State v. Burgin, 668 S.W.2d 668, 670 (Tenn. Crim. App. 1984)) (internal quotation marks omitted). As such, the Defendant was properly charged with and

_____

[2]The Defendant does not challenge the length of his sentences in this appeal.

plead guilty to two counts of aggravated rape because, during the attack, he penetrated the victim both digitally and with his penis. Therefore, we conclude that this issue is without merit.

With respect to the Defendant's consecutive sentences, an appellate court's review of a consecutive sentencing decision is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, on appeal the burden is on the Defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991); see also State v. Carter, 254 S.W.3d 335 (Tenn. 2008).

When a defendant is convicted of multiple offenses, the trial court must determine whether the sentences will be served consecutively or concurrently. Tenn. Code Ann. § 40-35-115(a). Tennessee Code Annotated section 40-35-115(b) provides seven classifications which, if established by a preponderance of the evidence, the trial court may order consecutive sentences. The presence of a single factor is enough to justify the imposition of consecutive sentences. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). One of the factors is that the defendant "is sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(6). Here, it was clearly established that the Defendant committed the offenses while he was on probation for an attempted aggravated kidnapping conviction. This fact alone was sufficient to justify the trial court's imposition of consecutive sentences. Accordingly, we affirm the sentences imposed by the trial court.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-7-